## KELLEY *v.* YPSILANTI DRESS-STAY MANUF'G CO.

(*Circuit Court, E. D. Michigan.* November 17, 1890.)

1. INJUNCTION—SUITS FOR INFRINGEMENT—ISSUE OF THREATENING CIRCULARS.

A defendant in a patent suit, who was the manufacturer of certain articles claimed to be an infringement of plaintiff's patent, sought to obtain an order enjoining the prosecution of three suits begun in other districts against its customers, as well as the commencement of new suits, and the sending of letters and circulars to others engaged in the trade, threatening prosecution for selling articles made by the defendant. *Held—First,* that the prosecution of suits in other districts should not be enjoined, because such suits were begun before this suit, and because comity demanded that application should be made to the court in which such suits were pending.

2. SAME—IRREPARABLE INJURY.

*Second,* that as the plaintiff might recover substantial damages against the defendant's vendees, in addition to those which he would be entitled to recover against the defendant as manufacturer, the commencement of new suits should not be enjoined, unless irreparable injury was threatened to defendant's business, or there was evidence of malice or bad faith on the part of the plaintiff in commencing such suits.

3. SAME.

And, *third,* that plaintiff had a right to notify persons using his device of his claim, and to call attention to the fact that, by selling or using it, they were making themselves liable to prosecution, and that an injunction would not be ordered unless the language of his letters or circulars was false, malicious, offensive, or opprobrious, or they were used for the willful purpose of inflicting an injury.

(*Syllabus by the Court.*)

In Equity.

On petition by defendant for an injunction to restrain the commencement and prosecution of suits against its customers and the sending of circulars to others engaged in the trade.

The petition set forth, in substance, that this suit was brought against the petitioner on the 10th of September, 1890, for the infringement of a patent corset stay; that petitioner owns property subject to execution in this district of the value of $50,000, and is engaged in the manufacture of dress stays at Ypsilanti, under a patent to Enoch C. Bowling, and another to Elsie M. Smith; that plaintiff has brought three suits for alleged infringement of his patent against customers of petitioner for selling, in the ordinary course of trade, dress stays made by petitioner, the defense of which suits petitioner is forced to assume, viz., one in the circuit court for the southern district of New York against the firm of

Calhoun, Robbins & Co., one in the circuit court of Massachusetts against Coleman, Mead & Co., and one in the circuit court for Illinois against the Storm & Hill Company; that the defendants in these suits are merchants, and have no real interest in the suits, petitioner being the real defendant; that, in addition to bringing said suits, plaintiff has sought further to intimidate the trade, and maliciously to injure and interfere with his business by means of circulars and letters from himself and his counsel addressed to petitioner's customers, threatening suit against them; and also in advertising that he will bring suit against any person who sells a dress stay made in the same manner as petitioner's; that petitioner has filed its answer, and is ready to proceed with the trial, and is abundantly responsible for all damages or profits which may be recovered against it. Prayer for an injunction against the prosecution of suits already begun, against the bringing of other suits against petitioner's customers, and against molesting in any way by letters, circulars, oral threats, or otherwise, persons who may buy or sell or deal in petitioner's dress stays, etc., during the pendency of this suit.

*George H. Lothrop*, for petitioner.

*Chas. H. Fisk* and *Broadnax & Bull*, for plaintiff.

BROWN, J. Defendant seeks in this petition to obtain an injunction for three distinct purposes, viz., to prevent (1) the prosecution of three suits already begun; (2) the commencement of new suits against its customers; and (3) the molesting of others engaged in the trade by letters, circulars, or oral threats. As the legal principles applicable to these three kinds of relief are not precisely the same, we are compelled to give them an independent consideration.

1. Conceding that there are intimations in some of the cases that the court has power to enjoin the prosecution of suits already begun in other districts, (although our attention has not been called to any reported case where an injunction was actually ordered,) we think that this power, if it exists at all, of which we have grave doubt, should not be exercised in this case for the following reasons: *First.* Because the suits sought to be enjoined were all begun before this suit. While this case may not be exactly within the line of authorities which hold that, where jurisdiction has once attached, it cannot be taken away by proceedings in another court,—a question which frequently arises where property in possession of one court is interfered with by another, or an issue pending in one court is raised in another,—still we apprehend that there must be some peculiar reason giving to the court enjoining some superior authority to the other, such, for instance, as the pendency of proceedings under the bankruptcy or limited liability act, to authorize it to reach out its arm and arrest a pending suit of like character in another court. *Second.* Because we think that comity demands that the application should be made to the court in which the proceedings are pending. Such court is perfectly competent to give the relief, and would undoubtedly do so upon a proper showing. For this court to assume such power is virtually an attempt to dictate to another court of co-ordinate jurisdic-

tion what it ought to do in a particular case, and would naturally be considered as an offensive intermeddling with its proceedings. *Third.* As the plaintiff is a non-resident of this district, an injunction, if granted, could only be enforced by staying proceedings in this court, or dismissing his bill. He might still elect to proceed in the other courts, which would be under no obligation to take notice of our injunction.

2. With regard to the commencement of new suits, there are undoubtedly authorities which support the contention of the defendant; but most of them seem to be founded upon an impression with regard to the rights of a patentee against infringers which the supreme court has held to be erroneous. Thus, in *Birdsall* v. *Manufacturing Co.*, 1 Hughes, 64, where a similar application was made by a defendant who had been sued for manufacturing and selling a patented machine for hulling and threshing clover, it was held that an injunction should be granted, the court giving as a reason:

"That the defendants were thoroughly responsible, and that upon the original suit being carried on to completion, if recovery was made, the complainant would recover in that suit all the profits that defendants had obtained from the wrongful manufacture, and the damages that he had suffered by reason of the wrongful manufacture, and that complainant would therefore be put in the same position as if he had originally sold all the machines; that, this being the case, he ought not to be allowed to interfere with the vendees of defendants while the suit against them was pending."

Yet, in a subsequent case upon the same patent, (*Birdsell* v. *Shaliol*, 112 U. S. 485, 5 Sup. Ct. Rep. 244,) it was held that a decree in favor of a patentee, upon a bill in equity against one person for making and selling a patented machine, was no bar to a subsequent suit by the patentee against another person for afterwards using the same machine within the term of the patent; that while a license to make, use, and sell machines gives the licensee the right to do so throughout the term of his patent, and has the effect of wholly releasing them from the monopoly, and discharging all claims of the patentee for their use by anybody, an infringer does not, by paying damages for making and using a machine in infringement of a patent, acquire any right himself to a future use of the machine. "On the contrary, he may, in addition to the payment of damages for past infringement, be restrained by injunction from further use, and, when the whole machine is an infringement of the patent, be ordered to deliver it up to be destroyed." The court in this case cites with approval the case of *Penn* v. *Bibby*, L. R. 3 Eq. 308, in which the chancellor said that "the patent is a continuing patent, and I do not see why the article should not be followed in every man's hands until the infringement is got rid of. So long as the article is used, there is a continuing damage." We do not see why the same principle does not apply to one who purchases of the manufacturer for the purpose of reselling to consumers. Indeed, it is difficult to see how this case can be reconciled with the language of the courts in *Spaulding* v. *Page*, 4 Fish. Pat. Cas. 641; *Gilbert, etc., Co.* v. *Bussing*, 12 Blatchf. 426; *Perrigo* v. *Spaulding*, 13 Blatchf. 391; *Booth* v. *Seevers*, 19 O. G. 1140. So, in *Allis* v.

*Stowell*, 16 Fed. Rep. 783, in which the injunction was denied, it was intimated that, "where a patentee recovers from an infringing manufacturer full damages and profits on account of the infringement, the purchaser from such manufacturer, who is a user of the machine, will be protected in such use against a suit for infringement, as he would be if he were a licensee from the patentee." In this view of the law it was held that, to prevent a multiplicity of suits, the court might, in a proper case, and on proper showing, require the prosecution of suits between a patentee and a mere user of a patented machine to be suspended, to await the result of the suit between the patentee and the principal infringer from whom the user purchased this machine,—a doctrine in which we fully concur, although we think the application should be made to the courts in which these suits are pending. The cases of *Ide* v. *Engine Co.*, 31 Fed. Rep. 901, and *National Cash Register Co.* v. *Boston Cash Indicator Co.*, 41 Fed. Rep. 51, seem to have been decided upon the authority of the prior cases, and without the attention of the court being called to the case of *Birdsell* v. *Shaliol*, above cited. Upon the other hand, in *Chemical Works* v. *Hecker*, 11 Blatchf. 552, it was held, by Mr. Justice BLATCHFORD, that the court had no jurisdiction of a bill filed by a patentee to assume to regulate the conduct of the plaintiffs by injunction, except as regards the proceedings in the particular suit. "To grant the injunction asked for, would be to turn the defendant into the plaintiff, and the plaintiff into the defendant, and to administer independent affirmative relief in favor of a party, without his coming into court as an actor, by bill or other pleading containing allegations capable of being put in issue by formal pleading, or of being contested on proofs, and to do so on matters arising *post litem motam*." See, also, *Asbestos Felting Co.* v. *U. S.*, etc., *Felting Co.*, etc., 13 Blatchf. 453.

The view we have taken of the case of *Birdsell* v. *Shaliol* seems to be supported by the opinion of Judge COXE, in *Tuttle* v. *Matthews*, 28 Fed. Rep. 98, in which a similar application for an injunction was denied upon the authority of that case.

There is undoubtedly great force in the argument that a defendant manufacturer, who has agreed to defend suits brought against his customers, and indemnify them against damages obtained by their selling his machines or device, ought not to be vexed by a multiplicity of suits in different parts of the country. But, in view of the case of *Birdsell* v. *Shaliol*, it is not easy to see how the recovery of damages from the defendant for manufacturing and selling would prevent the recovery of other substantial damages from the defendant's vendees for their profits upon reselling the patented articles. If the recovery of damages from the manufacturer does not operate as a license to use the patented article, or, in the language of the supreme court in *Bloomer* v. *McQuewan*, 14 How. 549, to pass it out of the limitation of the monopoly, there would seem to be no reason for enjoining him from prosecuting any one trespassing upon his domain. The risk of being mulcted in costs will ordinarily be sufficient to prevent the patentee from bringing any great number of suits until his patent has been judicially established.

In addition to these considerations, the plaintiff, by an injunction of this kind, might be debarred from the commencement of actions pending an appeal so long as to lose his rights against infringers, since it is well settled that the existence of an injunction does not operate to suspend the running of the statute of limitations. Wood, Lim. 484.

There would seem to be, however, no objection to the court in which such actions are brought staying proceedings in them until the validity of plaintiff's patent and the infringement of the defendant have been judicially ascertained in one of the principal suits; and perhaps in an aggravated case of threatened irreparable injury to defendant's business, or, if there were any evidence of malice, oppression, or bad faith on the part of the plaintiff, the court might enjoin temporarily the commencement of new suits.

3. With regard to the third branch of this application, viz., the molesting of others engaged in the trade by letters, circulars, and oral threats, it is sufficient to say that, even if it be conceded that a court of equity has power upon petition of a defendant to enjoin the plaintiff from publishing libelous statements concerning his business, there would seem to be no good reason why a patentee may not notify persons using his device of his claim, and call attention to the fact that, by selling or using it, they are making themselves liable to a prosecution. There is undoubtedly authority for holding that, if the language of such letters or circulars be false, malicious, offensive, or opprobrious, or used for the willful purpose of inflicting an injury, the party is entitled to his remedy by injunction; and this is the extent to which the authorities go. *Horey* v. *Rubber Tip Pencil Co.*, 57 N. Y. 119; *Snow* v. *Judson*, 38 Barb. 210; *Emack* v. *Kane*, 34 Fed. Rep. 46; *Croft* v. *Richardson*, 59 How. Pr. 356; *Wren* v. *Weild*, L. R. 4 Q. B. 730. Upon the other hand, it would seem to be an act of prudence, if not of kindness, upon the part of a patentee, to notify the public of his invention, and to warn persons dealing in the article of the consequence of purchasing from others, and in such cases an injunction has been uniformly denied. *Chase* v. *Tuttle*, 27 Fed. Rep. 110; *Boston Diatite Co.* v. *Florence Manuf'g Co.*, 114 Mass. 69; *Kidd* v. *Horry*, 28 Fed. Rep. 773. The language of the letters in the present case is perfectly respectful and courteous, and while the circular is a distinct and firm assertion of the patentee's rights, there is nothing in it to which the person receiving it can take a just exception. Nor is there anything to indicate that they were not written in good faith, and in the belief that the plaintiff had rights under his patents which he was entitled to protect by suit.

The motion for an injunction is therefore denied.