VIRTUE et al. v. CREAMERY PACKAGE MFG. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. . March 23, 1910.)

No. 3,167.

1. MONOPOLIES (§ 17*)—CONTRACTS IN RESTRAINT OF TRADE—FEDERAL ANTI-TRUST LAW.

A contract by which a manufacturing company, whose products are sold in interstate commerce, makes another sole agent for the sale of its products, is not in violation of Sherman Anti-Trust Act July 2, 1890. c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), as in restraint of interstate trade and commerce; its effect on such commerce, if any, being indirect and incidental.

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 17.*]

2. MONOPOLIES (§ 21*)—SUIT FOR INFRINGEMENT—RIGHT TO MAINTAIN.

That the owner of a patent is a party to an illegal combination in restraint of trade does not deprive him of the right to sue for infringement of his patent.

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 21.*

Rights and liabilities of parties contracting with trusts or combinations in restraint of trade, see note to Chicago Wall Paper Mills v. General Paper Co., 78 C. C. A. 612.]

3. MONOPOLIES (§ 28*)—COMBINATIONS IN RESTRAINT OF TRADE—ACTION FOR DAMAGES.

Evidence *held* insufficient to establish a combination or conspiracy in restraint of interstate trade or commerce between two defendants, each of whom brought a suit against plaintiff for infringement of a different patent, which would sustain an action by plaintiff for treble damages under Sherman Anti-Trust Act, July 2, 1890, c. 647, § 7, 26 Stat. 210 (U. S. Comp. St. 1901, p. 3202).

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 28.*]

4. LIBEL AND SLANDER (§ 132*)—TITLE—THREATENING SUITS FOR INFRINGEMENT OF PATENT.

The owner of a patent may lawfully notify infringers, or persons believed to be such, of his claims, and warn them that suit will be brought to protect his legal rights, where he acts in good faith.

[Ed. Note.—For other cases, see Libel and Slander, Dec. Dig. § 132.*]

In Error to the Circuit Court of the United States for the District of Minnesota.

Action by Dennis E. Virtue and the Owatonna Fanning Mill Company against the Creamery Package Manufacturing Company, the Owatonna Manufacturing Company, and Frank La Bare. Judgment for defendants, and plaintiffs bring error. Affirmed.

Harlan E. Leach (Charles I. Reigard and James F. Williamson, on the brief), for plaintiffs in error.

Emanuel Cohen (John B. Atwater and Frank W. Shaw, on the brief), for defendant in error Creamery Package Mfg. Co.

A. C. Paul (W. A. Sperry, on the brief), for defendants in error Owatonna Mfg. Co. and La Bare.

Before SANBORN and ADAMS, Circuit Judges, and RINER, District Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

RINER, District Judge. The plaintiffs in error were plaintiffs in the Circuit Court, the defendants in error were defendants in the Circuit Court, and will be hereafter referred to as plaintiffs and defendants, respectively. This was an action at law to recover treble damages under the seventh section of Act Cong. July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3202). The court below directed the jury to return a verdict in favor of the defendants, for the reason that the damages alleged in the complaint were not such damages as were contemplated by the act of Congress just mentioned.

The plaintiffs were engaged in the business of manufacturing combined churns and butter workers at Owatonna, Minn., and from there shipping and selling them in Minnesota and in other states. The defendant the Creamery Package Manufacturing Company, a corporation organized under the laws of Illinois, was also engaged in manufacturing and selling throughout the United States all kinds of dairy and creamery supplies and installing in creameries complete creamery outfits. The defendant the Owatonna Manufacturing Company, a corporation organized under the laws of Minnesota, was engaged in the manufacture of combined churns and butter workers. The defendant La Bare was president of the last-named corporation. The product of its plant was sold throughout the different states of the United States by the defendant the Creamery Package Manufacturing Company, pursuant to a contract hereafter referred to.

The record discloses that on the 2d of October, 1893, by an instrument in writing, Reuben B. Disbrow and Darius W. Payne, then owners of letters patent numbered 490,105, for a consideration, assigned said patent and the exclusive right to manufacture and sell throughout the United States and territories the Disbrow combined churn and butter worker covered by the patent, and also "all subsequent patents for improvements that may be made to it to the Owatonna Manufacturing Company"; that thereafter the Disbrow Manufacturing Company, a corporation organized under the laws of Minnesota, Reuben B. Disbrow being its president and Darius W. Payne its secretary, began the manufacture of certain churns called the Winner or New Disbrow. The defendant the Owatonna Manufacturing Company claimed that this churn was being manufactured under improvements which were patented by Reuben B. Disbrow after the 1893 agreement, and therefore belonged to the Owatonna Company as subsequent patents for improvements. At this time the defendant the Creamery Company had a contract, made in October, 1896, with the Disbrow Company for the sale of the Winner churn. It had also advanced money to the Disbrow Company and held a mortgage upon its plant for $800.

Litigation arose with respect to the rights of the parties under the agreement of 1893, and several suits were pending in relation thereto, when, in April, 1897, a settlement was effected by the execution of four instruments. One was a contract between the Disbrow Manufacturing Company and the Owatonna Manufacturing Company, in and by which the rights of all parties under the October, 1893, agreement were mutually released, the suits were settled, and the Disbrows sold their patents, machines, tools, and patterns to the Owatonna Manufacturing Company, and retired from the churn business during the life of the

patents. Another was an assignment of the Disbrow patents. A third was a contract between the Owatonna Manufacturing Company and the Creamery Package Manufacturing Company, by which the Creamery Package Manufacturing Company was made sales agent for all the churns manufactured by the Owatonna Manufacturing Company. The fourth was a contract between the Disbrow Manufacturing Company and the Creamery Package Manufacturing Company, whereby the agreement of October, 1896, between these parties was released and discharged and the mortgage on the plant of the Disbrow Manufacturing Company was satisfied, the Creamery Package Manufacturing Company agreeing to pay to the Disbrows royalties thereafter falling due from the Owatonna Manufacturing Company. These four contracts were executed at the same time, and, as shown by the recitals, were part of a single transaction. The purpose of these instruments, as disclosed by the instruments themselves, was to settle pending litigation and all matters concerning which the parties were at variance, and to cause the Disbrow Company to discontinue the manufacture of churns under the patents, which the Owatonna Manufacturing Company insisted belonged to it.

February 24, 1898, the defendant the Creamery Package Manufacturing Company and its stockholders entered into an agreement with a number of other concerns and persons engaged in the business of manufacturing and selling combined churns and butter workers and other creamery supplies. The purpose of this agreement, as stated by counsel for the defendant the Creamery Package Manufacturing Company in their brief, "was to advance the business interests of the different parties by settling and avoiding litigation pending and apprehended and by terminating unreasonable and ruinous competition." The defendant the Owatonna Manufacturing Company was not a party to this agreement, and, so far as the record shows, was not responsible for any act of the Creamery Package Manufacturing Company in carrying out its provisions. The only connection it had with the Creamery Package Manufacturing Company was by virtue of the provisions of its contract of April 19, 1897, with that company. That contract was not a contract in restraint of trade, nor was it an attempt to create a monopoly. As suggested by the trial court:

"It was merely a contract making the Creamery Package Manufacturing Company the sales agent of the Owatonna Manufacturing Company."

Even if it can be said that it incidentally or indirectly tended to restrain competition by giving the Creamery Package Manufacturing Company the exclusive right to sell its product, it would not violate the statute. As said by Judge Sanborn in Union Pacific Coal Company v. United States, 173 Fed. 737, 97 C. C. A. 581:

"If the necessary effect of a combination to engage in or conduct interstate or international commerce is but incidentally and indirectly to restrict competition therein, while its chief result is to foster the trade and to increase the business of those who make and operate it, it does not fall under the ban of this law." Hopkins v. United States, 171 U. S. 578, 19 Sup. Ct. 40, 43 L. Ed. 290; Anderson v. United States, 171 U. S. 604, 19 Sup. Ct. 50, 43 L. Ed. 800; United States v. Joint Traffic Association, 171 U. S. 505, 19 Sup. Ct. 25, 43 L. Ed. 259; Addyston Pipe & Steel Company v. United States, 175 U. S.

211, 20 Sup. Ct. 96, 44 L. Ed. 136; Whitwell v. Continental Tobacco Company, 125 Fed. 454, 60 C. C. A. 290, 64 L. R. A. 689, and cases there cited.

The record shows that the Creamery Package Manufacturing Company was the assignee of three certain patents, numbered respectively 539,571, 565,720, and 600,168; that the Owatonna Manufacturing Company was the owner of another patent, numbered 585,100, for new and useful improvements in combined churns and butter workers; that on the 16th of July, 1904, these two defendants brought independent suits against the plaintiffs for infringements of their patents. In the case of the Owatonna Manufacturing Company's patent, the patent was decreed to be void for lack of invention in view of the prior art. In the case of the Creamery Package Manufacturing Company's patents it was decreed that it was the owner of the patents sued on, and that the patents had been infringed by the plaintiffs, an injunction was issued, and the case referred to a master for an accounting. It is upon the prosecution of these two patent suits that the plaintiffs base their right of action. They insist that their business and the property used in connection therewith was injured, and their interstate trade and commerce destroyed, first, by the prosecution by the two defendants against the plaintiffs of these two separate patent infringement suits; and, second, by the defendants circulating among the agents, users, purchasers, and prospective purchasers of their product, located in different states, reports and statements to the effect that the combined churns and butter workers were infringements of patents owned and controlled by the defendants.

As already indicated, we do not think the contract between the Owatonna Manufacturing Company and the Creamery Package Manufacturing Company, giving the Creamery Company the exclusive sale of the Manufacturing Company's output, tended to suppress competition. The Manufacturing Company had the right to select its customers, and to sell and to refuse to sell to whomsoever it chose (Whitwell v. Continental Tobacco Company, 125 Fed. 454, 60 C. C. A. 290, 64 L. R. A. 689), and the provision making the Creamery Company its sole sales agent was a usual and reasonable method of providing for the disposition of its product. The effect of this contract, if, indeed, it had any effect, upon interstate or international commerce, was only incidental and indirect. The sole purpose of the contract, as we view it, was to settle pending and threatened litigation, and to secure to the Owatonna Manufacturing Company the right to manufacture and dispose of its product under certain patents, and to foster its trade and increase its business. In order to condemn an agreement as void under the act of July 2, 1890, its dominant purpose must be an interference with interstate or international commerce. Cincinnati, etc., Packet Company v. Bay, 200 U. S. 179, 26 Sup. Ct. 208, 50 L. Ed. 428. The same is true of the agreement between the same parties of June 4, 1898, which was an agreement for the settlement of certain litigation, and provided that the Owatonna Manufacturing Company should have the right to manufacture 55 per cent. of the total yearly sales made by the Creamery Company or be compensated in damages. This contract was merely supplemental to the contract of April 19, 1897, which contained no provision as to the amount of sales of the

Owatonna Manufacturing Company's product should be made by the Creamery Company, and this omission was supplied by this contract. Its only effect was to foster the interests of the Owatonna Manufacturing Company, and did not affect competition.

It is not necessary in the disposition of this case to determine the question whether or not the contract of February 24, 1898, between the Creamery Manufacturing Company and other concerns and individuals, to which the Owatonna Manufacturing Company was not a party, violated the provisions of the act of Congress. We may assume, however, for the purposes of this case, without deciding the question, that it was a contract in violation of the statute. We then have a case where two suits are brought, one by a party to a lawful agreement, the other by a party to an unlawful agreement, for the infringement of patents owned by them respectively, and where both parties were doing nothing more than exercising their legal rights. The mere fact that the Creamery Package Manufacturing Company was a party to an unlawful combination would not deprive it of the right to sue and recover damages against an infringer of patents owned by it, or to bring suit if it believed the patents were being infringed. As was said in Strait v. National Harrow Company (C. C.) 51 Fed. 819, the owner of a patent having a right to bring suit for its infringement:

"The motive which prompts him to sue is not open to judicial inquiry, because, having a legal right to sue, it is immaterial whether his motives are good or bad, and he is not required to give his reasons for the attempt to assert his legal rights." Connolly v. Union Sewer Pipe Company, 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679, and cases there cited.

As suggested by the Circuit Court:

"There is no evidence which would justify a jury in finding that the Owatonna Manufacturing Company entered into any agreement or contract with any one that was in violation of either section 1 or section 2 of the act, so that the Creamery Package Manufacturing Company cannot be held responsible for the failure of the Owatonna Manufacturing Company to maintain its action, and it cannot be held responsible, although it may have entered into an unlawful conspiracy with other persons, for it has not entered into any such conspiracy with the Owatonna Manufacturing Company."

The contract of February 24, 1898, between the Creamery Company and other concerns and individuals, contained no provision for the bringing of actions against alleged infringers of its patents for the purpose of driving them out of business, and there was certainly nothing of the kind in any of the contracts made and entered into between the defendants. The mere fact that the two infringement suits were brought upon the same day and the defendants were represented by the same counsel does not show, or even tend to show, that they were brought for any purpose other than the enforcement of the legal rights of the owners of the patents. It falls far short, it seems to us, of establishing an agreement or conspiracy between the defendants to bring these suits at the same time for the purpose of driving the plaintiffs out of business, and after a patient and thorough examination of the record we think the Circuit Court was fully justified in holding that there was no evidence offered at the trial "which would warrant the jury in finding that any agreement of that kind existed."

As a second basis for the recovery of damages, the plaintiffs contend that the defendants circulated among the agents, users, purchasers, and prospective purchasers of the churns of the plaintiffs, located in different states, reports and statements that the combined churns and butter workers sold by the plaintiffs were infringements of the Disbrow patents owned or controlled by the defendants, and that they threatened to bring suits against the users of the plaintiffs' churn. That the owner of a patent may notify infringers of his claims, and warn them that, unless they desist, suits will be brought to protect him in his legal rights, is sustained by numerous decisions. Kelley v. Ypsilanti Dress Stay Manufacturing Co. (C. C.) 44 Fed. 19, 10 L. R. A. 686; Computing Scale Company v. National Computing Scale Company (C. C.) 79 Fed. 962; Farquhar Company v. National Harrow Company, 102 Fed. 714, 42 C. C. A. 600, 49 L. R. A. 755; Adriance, Platt & Co. v. National Harrow Company, 121 Fed. 827, 58 C. C. A. 163; Warren Featherbone Company v. Landauer (C. C.) 151 Fed. 130; Mitchell v. International, etc., Company (C. C.) 169 Fed. 145; 30 Cyc. 1054.

The only limitation on the right to issue such warnings is the requirement of good faith. There is nothing in the warnings given in this case to show that the letters or notices were false, malicious, offensive, or opprobrious, or that they were used for the willful purpose of inflicting injury. In such a case it was said, in Kelley v. Ypsilanti, supra:

"It would seem to be an act of prudence, if not of kindness, upon the part of a patentee, to notify the public of his invention, and to warn persons dealing in the article of the consequence of purchasing from others. Chase v. Tuttle [C. C.] 27 Fed. 110; Boston Diatite Company v. Florence Manufacturing Company, 114 Mass. 69 [19 Am. Rep. 310]; Kidd v. Horry, 28 Fed. 773."

There is nothing in this case to indicate that any of the warnings issued by the defendants were made in bad faith, and they were promptly followed by the institution of the infringement suits. In issuing notices and warnings we think the defendants were acting within their legal rights. If they had the right to bring the suits, they had the right to issue the warnings. It may be, and probably is, true that the pendency of these suits resulted in some damage to the plaintiffs by lessening the sale of the challenged device; but such damage was an incident of the suits, and cannot be made the basis of a recovery.

The conclusion reached is that the Circuit Court properly directed the jury to return a verdict for the defendants, and the judgment is affirmed.