## KELLOGG CO. v. NATIONAL BISCUIT CO.
### No. 272.

Circuit Court of Appeals, Second Circuit.
June 18, 1934.

Crichton Clarke, of New York City, for appellant.

Cooper, Kerr & Dunham, of New York City (Drury W. Cooper and Charles A. Vilas, both of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

It might at first seem that this action against the National Biscuit Company by a competitor to recover treble damages under section 4 of the Clayton Act (15 USCA § 15) was without foundation, but we are on the

whole inclined to think that enough is set forth in the complaint to withstand demurrer and to require the defendant to submit to trial.

The charge in general is of an unlawful attempt to monopolize the business of selling shredded wheat. This charge is confused with claims that the defendant is responsible for acts done by Shredded Wheat Company, a predecessor corporation from which it purchased a business in shredded wheat, together with certain trade-marks and property. It is nowhere alleged that this purchase involved a merger, consolidation, or other method of succession whereby the defendant would become responsible for the liabilities in contract or tort of its predecessor. For all we know, it acquired the properties for cash and succeeded to none of the liabilities of Shredded Wheat Company.

A great part of the verbose and at times confused allegations of the amended complaint relates to transactions of defendant's predecessor which it is sought to impute to the defendant by alleging that it "has ratified, adopted and still continues the before described scheme of its predecessor to suppress competition in said interstate shredded wheat business and thereby secure to itself a complete monopoly therein. * * *" As the complaint stands, this portion of what may be termed the prologue is almost entirely irrelevant to a cause of action that only arose after the defendant had purchased the business and trade-marks of Shredded Wheat Company in 1930, and has no application except as it contains allegations of vague import that since the purchase the defendant has continued the course of conduct of its predecessor. But the alleged torts of the defendant should not rest on indefinite comparisons with another corporation, but on precise allegations as to its own actions.

Clause 43 and the clauses following, however, seem to contain certain allegations pertinent to the cause of action asserted. They state that about the year 1930 the defendant purchased the going business and property of the Shredded Wheat Company and directed its salesmen to slander plaintiff and its product by telling dealers that its product is an inferior and outlaw product, that it is not shredded wheat, but a spurious and inferior imitation and that the defendant alone has the exclusive legal right of making and selling shredded wheat. The complaint further alleges threats that dealers will be prosecuted as contributory infringers for buying, handling, and vending plaintiff's product and must cease on pain of being unable to procure other of defendant's products, that they will be boycotted and held up to the trade as infringers and conspirators with the maker of outlaw goods, and that they must break their contracts with plaintiff. It is further alleged that through newspapers, magazines, and trade journals of the nation a similar false, intimidating, and libelous campaign of propaganda has been directed by defendant against plaintiff, its product and dealers, defendant at times basing such propaganda upon false claims of exclusive rights to expired patent processes and trade-mark words, all for the purpose of destroying plaintiff's competitive business in shredded wheat biscuits and of exclusively appropriating the same to itself. The plaintiff likewise alleges that the defendant, as a further step in its monopolistic scheme, in bad faith instituted, in June, 1932, an "unwarranted, vexatious and unjustifiable" action in the United States District Court for the District of Delaware to restrain the manufacture of shredded wheat in the form and shape shown in the expired design patent formerly belonging to defendant's predecessor and to enjoin the use of the words "shredded wheat" in any way, and that it has threatened a large number of customers of plaintiff through the several states whose names are set forth, warning them that plaintiff's product is not shredded wheat and that defendant has exclusive right to sell that product. These things are alleged to have been done by the defendant, though it knew that its exclusive monopoly and trade-mark claims were invalid, in order to restrain competition and secure a monopoly in the business of shredded wheat. It is further alleged that defendant, in the year 1932, as a part of its unlawful scheme, marketed a new size of biscuit substantially indistinguishable from the biscuit which plaintiff had designed in order to differentiate its goods from those of defendant, and that this was done in order that defendant's biscuit might be substituted for plaintiff's biscuit and palmed off as such. The complaint further alleges that, by reason of the vexatious suit and the attempted monopoly and false propaganda, plaintiff has been damaged in its business and property in a sum in excess of $1,000,000.

Reading the complaint as a whole, it seems probable that plaintiff little relies on the simple allegations that defendant has falsely represented that plaintiff's goods are of inferior quality and infringe process patents, or on threats to do no business with concerns that are customers of plaintiff, but really bases its cause of action on the ground that defendant

has asserted to the trade that plaintiff could not make its biscuits in the shape of defendant's and could not use the words "shredded wheat" in any way and has made this assertion in spite of the fact that defendant has no valid trade-mark or other rights either in the name "shredded wheat" or in the shape of the biscuits it sells and was aware of this fact. This interference with plaintiff's use of descriptive words and forms of shredded wheat functionally necessary is said to have prevented it from marketing its goods and to have tended both to restrain competition and to effect a monopoly. In support of this view, plaintiff argues that in Shredded Wheat Co. v. Humphrey Cornell Co., 250 F. 960, we decided that, while the shape of shredded wheat biscuits employed by the Shredded Wheat Company had acquired a secondary meaning indicating that such biscuits were the product of that company, we would not require the defendant in that case to change the shape or size of its biscuits, but only to affix a mark or tag thereon that would indicate that they were not the goods of the Shredded Wheat Company. Plaintiff alleges that it has made its biscuits of a different shape from those of defendant and that they are now readily distinguishable from the usual shape of the latter. Therefore, plaintiff says, defendant's claims to the trade of exclusive rights are only calculated to prevent plaintiff from competing and to aid defendant in maintaining a monopoly. Plaintiff likewise argues that the decision of the Court of Appeals of the District of Columbia in Natural Food Co. v. Williams, 30 App. D. C. 348, shows the lack of foundation and bad faith of defendant's claim of an exclusive right to use the name "shredded wheat," for that court refused to sustain a trade-mark in the words "shredded whole wheat" under the Act of February 20, 1905 (15 USCA § 81 et seq.), on the ground that the language was purely descriptive and had not been exclusively used by Natural Food Company, one of the predecessors in title of National Biscuit Company, for more than ten years.

We cannot regard either Shredded Wheat Co. v. Humphrey Cornell Co. or Natural Food Co. v. Williams, supra, as showing that defendant's claims of an exclusive right to use the name "shredded wheat," or the shape in which it vends its biscuits, are without merit or indeed as determining the rights of either party hereto. Nor would they in any event afford controlling criteria either for this court or the District Court of Delaware, where the parties are not the same and the proofs may entirely differ. Moreover, the decision in Natural Food Co. v. Williams affected only trade-marks issued under the Act of 1905, and was merely that the words "shredded whole wheat" had not at the time been exclusively used by Natural Food Company for more than ten years. There seems nothing in either decision that necessarily determines the rights of the parties here.

The question arising upon the trial of the present action will be of the sufficiency of proof of acts showing an attempt to effect a monopoly and substantially to restrain competition in shredded wheat. To bring the defendant under the Anti-Trust Acts (15 USCA § 1 et seq.), the plaintiff may show that defendant has threatened to cease dealings with customers unless they declined to deal with plaintiff, has falsely represented plaintiff's goods to be inferior, and has in bad faith and without probable cause told plaintiff's customers that they could not use the words "shredded wheat" or market a biscuit of the shape employed by the defendant. It is alleged that the plaintiff has been doing business recently without using shredded wheat as a name to designate its goods, and it may not appear that any loss has followed from that course. If such should be the case, it is difficult to suppose that plaintiff has suffered damage unless from false propaganda to the effect that plaintiff's goods were inferior, or that they were covered by patents which had in fact expired—that is to say, from threats of one kind or another whereby plaintiff has been deprived of customers.

Defendant earnestly contends that even deliberate bad faith in claiming an exclusive right to the name "shredded wheat" and to the form in which its biscuits are marketed would only establish a cause of action for unfair competition or malicious prosecution. We are not convinced that such is the case. Undoubtedly such causes of action would ordinarily have nothing to do with the Anti-Trust Acts. But if they were part of an attempt to effectuate a monopoly we cannot see that they would certainly fall outside of the statute merely because the facts furnished a basis for causes of action for unfair competition or malicious prosecution. If a person having no substantial claim to a trade-mark in the words "shredded wheat" uses the claim in bad faith to threaten a competitor and his customers with lawsuits in order to prevent dealings by the latter in that commodity, they would seem to be steps in an attempt to obtain a monopoly. If he claims, without probable cause and

in bad faith, that he is entitled to sell all the shredded wheat of a certain size or shape, that would be a further step.

 It must be borne in mind, however, that it would not be enough to show that the defendant brought a groundless suit to establish a trade-mark or the exclusive right to market goods of a certain shape. There must be adequate proof that it was with the attempt not to establish the right but to restrain competition and monopolize part of the trade or commerce between the several states. Virtue v. Creamery Package Mfg. Co., 227 U. S. 8, 38, 33 S. Ct. 202, 57 L. Ed. 393. While it doubtless would not be within the Anti-Trust Acts to bring a suit to assert a patent or trademark right whatever the motive, if the claim was valid, an attempt to assert a known invalid claim would be a different matter. Virtue v. Creamery Package Co. (C. C. A.) 179 F. 115, 120, affirmed 227 U. S. 8, 33 S. Ct. 202, 57 L. Ed. 393; Mitchell Woodbury Corp. v. Albert Pick Barth Co., Inc. (C. C. A.) 41 F.(2d) 148. The remarks to the contrary in International Visible Systems Corp. v. Remington-Rand, Inc. (C. C. A.) 65 F.(2d) 540, with all respect, we are unable to agree with. But questions as to the purpose of prosecuting the Delaware suit are for the trial court, and cannot be determined on a motion attacking the complaint.

 On the trial, the principal question will be whether the defendant has attempted to monopolize the trade in shredded wheat or only to establish exclusive rights in certain trade-names, trade-marks, and shapes of the manufactured product. If the latter, the cause of action so far as it is based on bringing the Delaware suit must fail. Indeed, unless much more can be established than the bringing of that suit and that it is unlikely to succeed, it would seem that this plaintiff should try out its rights there and not burden the courts with an action which would, in that event, show no promise. In view of the rule that on demurrer every intendment is taken to be in favor of the pleader, we think there are enough general allegations to prevent a dismissal.

 It is contended by defendant that its registered trade-marks cannot be attacked collaterally. While it is true that a registered trade-mark cannot be canceled except by direct attack in the way prescribed in the statute, trade-marks registered under the law of 1920 (Act Cong. March 19, 1920, 41 Stat. 533 [15 USCA § 121 et seq.]), as those in question were, are not thereby rendered valid. Their validity may still be questioned in any suit in which they are relied upon. That act was for the purpose of enabling persons in this country to register trade-marks so that they might obtain registration under the laws of foreign countries. As we said in Charles Broadway Rouss v. Winchester Co., 300 F. 706, it has no effect on the domestic rights of the person whose trade-mark is registered. In short, the registration cannot in itself determine any of the issues involved in the present case.

The order is reversed, with direction to deny the motion to dismiss the complaint.