**STADIUM MFG. CO., Inc., v. PLYMOUTH PAJAMA CORPORATION.**

No. 4382.

District Court, D. Massachusetts.

Jan. 14, 1937.

Herbert A. Baker and Alan B. Bagley, both of Boston, Mass., and Julius H. Wyman and Harry Kairys, both of Baltimore, Md., for plaintiff.

Robert L. Thompson and Roberts, Cushman & Woodberry, all of Boston, Mass., for defendant.

**780**

BREWSTER, District Judge.

In defendant's answer to plaintiff's patent infringement suit it has set up two counterclaims, one based on unfair competition and the other upon the recent Declaratory Judgment Act, 28 U.S.C.A. § 400. Plaintiff moves to strike out both counterclaims.

■■■ The unfair competition charged against the plaintiff is the warning which the plaintiff has spread among the trade, including defendant's customers, to the effect that the defendant is manufacturing a garment which infringes the plaintiff's patent. These notices were given before and after this suit was instituted. Plaintiff argues that it was merely performing a duty imposed by law in notifying the trade as it did. Rev.St. § 4900, 35 U.S.C.A. § 49, does impose a duty on patentees to give notice that the article embodying the invention is covered by a patent, but I find nothing in the statute, or in the decisions, which holds that a patentee is under a duty to notify customers of a competitor that the competitor is infringing the patent. That the patentee has a right to notify customers of an alleged infringing manufacturer or dealer has been recognized from early days by the Court. Kelley v. Ypsilanti Dress-Stay Mfg. Co., C.C., 44 F. 19, 23, 10 L.R.A. 686; Virtue v. Creamery Package Mfg. Co., 8 Cir., 179 F. 115, 120; Alliance Securities Co. v. De Vilbiss Mfg. Co., 6 Cir., 41 F.2d 668, 670; Oil Conservation Engineering Co. v. Brooks Engineering Co., 6 Cir., 52 F.2d 783, 785; Boston Diatite Co. v. Florence Mfg. Co., 114 Mass. 69, 19 Am.Rep. 310.

But this right has limitations, and if the patentee over-steps the boundaries to the injury of another, and that injury is likely to continue, equity has intervened by restraining the continuation of the unlawful acts of a patentee. Thus, in Oil Conservation Engineering Co. v. Brooks Engineering Co., supra, it is said that [page 785], "Notices to the competitor that he is infringing, and perhaps to the manufacturer for the competitor, and to a limited number of his chief customers, are the normal procedure and not to be condemned, when characterized by good faith. If not well based, they are in the nature of libels or slanders of title; possibly they are analogous to a cloud upon the competitor's title to his business and to his output. A court of equity has no jurisdiction to enjoin a mere slander or libel.

* * * It is only when such slanders are both in bad faith—that is, malicious—and are working destruction of property or property rights, that equity will interfere; otherwise, the remedy is at law. * * * It fully recognizes that bad faith and malice must appear before any such power exists; and this limitation has been repeatedly affirmed."

See, also, Asbestos Shingle, Slate & Sheathing Co. v. H. W. Johns-Manville Co., C.C., 189 F. 611; Alliance Securities Co. v. De Vilbiss Mfg. Co., supra.

In the Asbestos Shingle, Slate & Sheathing Co. Case, supra, it was held that an injunction against claims of infringement would not issue unless the patentee acted in bad faith, and in the Alliance Securities Co. Case, supra, the Court, commenting upon the views expressed in the last named case, observed that they were "not inconsistent with the right of an equity court in which an infringement suit is pending to restrain the plaintiff from oppressive and inequitable harassing of the defendant's customers" [page 670].

There would seem to be, therefore, authority for the proposition that a patentee's right to notify a competitor does not extend to warnings which are spread throughout the trade in bad faith without an honest belief that his patent is valid and infringed and with a deliberate purpose of impairing the business and good will of his competitor.

It is necessary to examine the allegations of defendant's counterclaim. They may be summarized as follows:

The defendant alleges the requisite diversity of citizenship and jurisdictional amount; the plaintiff and defendant are competitors in the business of manufacturing and selling pajamas in the United States; defendant's product has attained a high reputation in the trade; on September 25, 1936, plaintiff brought an infringement suit against the defendant for infringing Letters Patent of the United States No. 1,740,554 relating to pajama pants; since April 21, 1936, the pajama pants manufactured by the defendant have not infringed plaintiff's patent "for obvious reasons well known to plaintiff"; on said date and on subsequent dates prior to September, 1936, defendant advised plaintiff in writing that its pajamas did not infringe; the defendant, for a long time prior to the filing of the bill of complaint, had been aware that the only garments

manufactured and sold by the defendant since April, 1936, were non-infringing garments; "that there could not be a color of a claim of infringement of the claims of plaintiff's said patent by virtue of defendant's manufacture or sale thereof"; that plaintiff, well knowing the premises, gave public notice of the pendency of the infringement suit and warned the trade against unauthorized manufacture and sale of pajama pants embodying the invention contained in plaintiff's patent; this notice and other warning notices given out by the plaintiff to defendant's customers since April 21, 1936, had been for the purpose of intimidating and deceiving defendant's customers and injuring its business, good will and reputation in the trade, and that, as a result of these acts on the part of the plaintiff, the orders for defendant's pajamas had been cancelled and the defendant had otherwise suffered damage, as alleged in the counterclaim. The defendant further alleges that plaintiff threatened "to continue to make such damaging, false and misleading statements all to the irreparable injury of the defendant, its business, good will and reputation" and that defendant "has no adequate remedy at law."

[3, 4] At the outset it may be observed that plaintiff, of course, is not bound by the notices which it received from the defendant that the defendant's garment did not infringe, and a comparison of the exhibits attached to the counterclaim, and the illustrative drawings in the patent, hardly justify the allegation that the defendant's pajamas did not infringe "for obvious reasons." Nevertheless, such is the allegation of the counterclaim, and it must be taken to be true. Whether the actions of the plaintiff in bringing the infringement suit and warning the trade were taken in the honest belief that defendant was chargeable with infringement, is a question of fact to be proved. That question, however, is not now presented.

The plaintiff urges further that there is no definite threat to sue defendant's customers and, therefore, plaintiff is within its rights in sending the notice. The notice, reciting the pending suit against this defendant, justifies the inference that in plaintiff's eyes the defendant's product infringes. The published warnings would be rather innocuous if they did not carry a veiled threat to prosecute any who sold or manufactured alleged infringing garments.

There is no distinction in principle between threats to sue for infringing a void patent and threats to sue for infringement when there is no infringement.

It is my opinion that the allegations of the counterclaim as a whole amount to a charge that the plaintiff, with full knowledge that the defendant was not manufacturing and selling infringing garments, nevertheless falsely represented to the defendant's customers that its pajamas were infringing garments and, for the purpose of harassing and injuring the defendant in its business, instituted this suit and notified the trade of its pendency. This charge, if proved, in my judgment would show such bad faith that it would constitute a wrong for which the defendant would be entitled to redress.

As to the suggestion that the defendant's remedy at law is adequate, it has alleged the contrary and, moreover, has alleged that the plaintiff had threatened to continue the acts which constitute the wrong. Whatever doubts I may entertain respecting the probability of this counterclaim being established by proof, I can only now decide that the counterclaim may not be stricken from defendant's answer.

With regard to the second counterclaim seeking a declaratory judgment, it appears that defendant has alleged a real controversy between citizens of different states and has asked for a declaration respecting its rights to manufacture and sell its product unmolested by infringement suits instituted, or threatened, by the plaintiff as owner of a patent the validity of which is questioned. That the Declaratory Judgment Act, 28 U.S.C.A. § 400, may be invoked for that purpose has been held in other jurisdictions. Zenie Bros. v. Miskend, D.C., 10 F.Supp. 779; Automotive Equipment, Inc., v. Trico Products Corp., D.C., 11 F.Supp. 292; Mitchell & Weber, Inc., v. Williamsbridge Mills, D.C., 14 F.Supp. 954; Link-Belt Co. v. Dorr Co., D.C., 15 F.Supp. 663. And this Court intimated as much in New York Life Ins. Co. v. London, 15 F.Supp. 586. But whether the statute may be invoked by a defendant in a counterclaim under Equity Rule 30, 28 U.S.C.A. following section 723, is a question upon which the courts are not agreed. In Link-Belt Co. v. Dorr Co., supra, such a course was recommended, but in a well-considered opinion in Hann v. Venetian Blind Corp., D.C., 15 F.Supp. 372, the Court was of

782

the opinion that a counterclaim which set up matters available as a defense to plaintiff's bill was not a counterclaim within the meaning of the rule. This decision apparently rested upon the proposition that "In a suit for the infringement of a patent, the counterclaim must assert matters which are not otherwise available as a defense under the general issue and the affirmative defenses" [page 378]. The defendant challenges this statement. It argues that the construction given the rule by the learned Court in the Hann Case is too narrow. No cases were cited, and I find none which has imposed such a limitation upon the provisions of the rule relating to counterclaim.

As above indicated, an attack upon the validity of the patent may be made the subject-matter of an independent suit in equity brought under the Declaratory Judgment Act, and would, therefore, seem to come within the terms of the rule. It was pointed out in the Hann Case that the sole purpose of asking for a declaratory judgment in the counterclaim was to keep the plaintiff in court, and that object was not deemed sufficient. If a defendant, by answering the plaintiff's bill of complaint, could obtain all that he could secure under the Declaratory Judgment Act, I would be inclined to agree that a counterclaim, based on the Act, would be entirely superfluous and might very well be dismissed on motion, but the Declaratory Judgment Act gives a right to affirmative relief which one could not obtain by merely setting up a defense to plaintiff's case.

To hold that in no case can a defendant in an infringement suit take advantage of the statute by way of counterclaim under Rule 30 is, in my opinion, to read into the rule a limitation which was not intended.

· In the case at bar, however, there is not only a defense pleaded but also a counterclaim which I have allowed to stand and upon which the plaintiff could obtain all affirmative relief which could possibly be afforded by the Act and, of course, the rights of the parties will be settled upon the pleadings, without the necessity of the second counterclaim. If the sole object is to keep the plaintiff in court, the first counterclaim, based upon unfair competition, will accomplish that purpose. In re Skinner & Eddy Corp., Pet'r, 265 U.S. 86, 44 S.Ct. 446, 68 L.Ed. 912; French Republic v. Inland Nav. Co., D.C., 263 F. 410; Dooley v. Fritz, D.C., 38 F.2d 123.

See, also, Southern Pacific Co. v. McAdoo, 9 Cir., 82 F.2d 121.

In New York Life Ins. Co. v. London, supra, this Court recognized that the granting of a declaratory judgment was discretionary with the Court and added [page 590]: "that discretion ought not to be exercised on a motion to dismiss for want of equity unless the court is fully satisfied that upon its allegations the bill must be dismissed after hearing on the merits. White v. Federal Radio Comm., D.C., 29 F.2d 113."

Having overruled plaintiff's motion to strike out the counterclaim as to unfair competition, and believing as I do that no useful purpose will be served by retaining the second counterclaim, I have reached the conclusion that the case is one where discretion might well be exercised at this preliminary stage of the proceeding.

In view of the foregoing, plaintiff's motion to strike out the first counterclaim is denied, and its motion to strike out the second counterclaim is allowed.