VIRTUE *v.* CREAMERY PACKAGE MANUFAC-
TURING COMPANY AND OWATONNA COM-
PANY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH
CIRCUIT.

No. 80. Argued December 9, 10, 1912.—Decided January 20, 1913.

To sustain an action under § 7 of the Sherman Act a necessary element is coöperation by some of the defendants in a scheme involving monopoly or restraint of interstate trade and causing the damage complained of.

The owner of a patent has exclusive rights of making, using and selling, which he may keep or transfer in whole or in part.

Patents and patent rights cannot be made a cover for violation of law; but they are not so used when only the rights conferred by law are exercised.

Patent rights can be protected by a party to an illegal combination.

While the combined effect of the separate acts alleged to have made the combination illegal must be regarded as a whole, the strength of each act must be considered separately.

Assertion of patent rights may be so conducted as to constitute malicious prosecution; but failure of plaintiff to maintain the action does not necessarily convict of malice.

Mere coincidence in time in the bringing by separate parties of suits for infringements on patents against the same defendant *held*, in this case, not to indicate a combination on the part of those parties to injure the defendant within the meaning of § 7 of the Sherman Anti-trust Act.

A contract by which a manufacturer of a patented article appoints another who does not manufacture or sell like articles, his exclusive agent for the output of the factory, *held* in this case not to violate the Sherman Act.

Where an action under § 7 of the Sherman Act was tried in the Circuit Court and argued in the Circuit Court of Appeals on the basis of coöperation between the defendants, this court will not consider a contention raised for the first time that one of the defendants was itself a combination offensive to the statute.

In this case it does not appear that the contracts between the defendants were made for the purpose of injuring the plaintiff, and both courts below having so held this court also so holds.

179 Fed. Rep. 115, affirmed.

THE facts, which involve the construction of § 7 of the Sherman Anti-trust Act and what constitutes an illegal combination thereunder, are stated in the opinion.

*Mr. Harlan E. Leach*, with whom *Mr. James F. Williamson* and *Mr. James A. Tawney* were on the brief, for plaintiff in error:

It is not necessary to prove the commission of any tort, wrongful act or crime on the part of defendants, aside from what is prohibited by the terms of the Sherman Anti-trust Act, in order to make the defendants liable

in damages to the plaintiffs in this action. *Loewe* v. *Lawlor*, 208 U. S. 274; *Montague* v. *Lowry*, 193 U. S. 38; *Chattanooga F. & P. Works* v. *Atlanta*, 203 U. S. 390; *Jayne* v. *Loder*, 149 Fed. Rep. 21; *Wheeler-Stenzel Co.* v. *National Window Glass Ass'n*, 152 Fed. Rep. 864, S. C., 10 L. R. A. (N. S.) 972; *Penn. Sugar Co.* v. *Am. Sugar Co.*, 166 Fed. Rep. 254; *People's Tobacco Co.* v. *Am. Tobacco Co.*, 170 Fed. Rep. 396; *Monarch Tobacco Works* v. *Am. Tobacco Co.*, 165 Fed. Rep. 774; *Swift* v. *United States*, 196 U. S. 395.

The act of combining—the concerted action—is unlawful in itself, and is the basis of a cause of action for damages. *Loewe* v. *Lawlor; Swift* v. *United States; Penn. Sugar Co.* v. *Am. Sugar Co.; Jayne* v. *Loder, supra; Aikens* v. *Wisconsin*, 195 U. S. 194; *Ellis* v. *Inman*, 131 Fed. Rep. 182.

It is not necessary that the act which caused the damage should be anything in itself prohibited by the Antitrust Act. It is not necessary that it be a step in the formation of the "contract," "combination" or "conspiracy" or a step in the attempt to secure monopoly. It is sufficient if such an act originated in, or was directly associated with, the motives which were the cause of the contract, combination, conspiracy or attempt to secure monopoly. *Chattanooga Works* v. *Atlanta*, 203 U. S. 390.

Plaintiffs in error were engaged in interstate trade and commerce. *Loewe* v. *Lawlor; Montague* v. *Lowry; Penn. Sugar Co.* v. *Am. Sugar Co., supra; Shawnee Compress Co.* v. *Anderson*, 209 U. S. 423.

Every agreement or transaction whose direct effect is to destroy or prevent competition is in restraint of trade. *Northern Securities Co.* v. *United States*, 193 U. S. 197; *United States* v. *American Tobacco Co.*, 164 Fed. Rep. 700; *Shawnee Compress Co.* v. *Anderson*, 209 U. S. 423; *United States* v. *Trans. Mo. Freight Ass'n*, 166 U. S. 290; *United States* v. *Joint Traffic Ass'n*, 171 U. S. 505.

A scheme or contract whereby a corporation disposes of its business, and agrees to ever thereafter remain out of business, is illegal and void, under the Sherman Antitrust Act. *Shawnee Compress Co.* v. *Anderson*, 209 U. S. 423.

A combination has obtained a monopoly when it has reached a position where it can control prices and suppress competition. *United States* v. *Am. Tobacco Co.*, 164 Fed. Rep. 700, 721.

Where the necessary and direct effect of the combination is to restrain trade or effectuate a monopoly, the intent is immaterial. *Addyston Pipe & Steel Co.* v. *United States*, 175 U. S. 211.

But where acts in themselves are not directly in restraint of trade or do not directly tend towards a monopoly, or are only an attempt, the intent of the parties becomes material. *Swift* v. *United States; Loewe* v. *Lawlor, supra; Penn. Sugar Co.* v. *Am. Refining Co.*, 166 Fed. Rep. 254; *Bigelow* v. *Calumet & Hecla Co.*, 167 Fed. Rep. 704, 709.

In cases of conspiracy it is always permissible to allege and prove the history and various steps culminating in the final conspiracy, even though the previous steps were separate and distinct offenses, if they tend to throw light on the present conspiracy and to show the intent with which the final acts were committed. Wharton on Criminal Ev., § 32; Greenleaf on Ev., § 111; 8 Cyc., pp. 677, 678, 684; *Swift* v. *United States*, 196 U. S. 395; *United States* v. *Greene*, 115 Fed. Rep. 344; *Lincoln* v. *Claflin*, 7 Wall. 132; *Mut. Life Ins. Co.* v. *Armstrong*, 117 U. S. 598; *Moline-Milburn Co.* v. *Franklin*, 37 Minnesota, 137.

A person or corporation joining a conspiracy after it is formed, and thereafter aiding in its execution, becomes from that time as much a conspirator as if he originally designed and put it in operation. *United States* v. *Standard*

*Oil Co.*, 152 Fed. Rep. 294; *Lincoln* v. *Claflin*, 7 Wall. 132; *United States* v. *Babcock*, 24 Fed. Cas. 915, No. 14,487; *United States* v. *Cassidy*, 67 Fed. Rep. 698, 702; *The Anarchist Case*, 122 Illinois, 1; *United States* v. *Johnson*, 26 Fed. Rep. 682, 684; *People* v. *Mather*, 4 Wend. 230.

The contract of February 24, 1898, being illegal and void, the defendant Creamery Company obtained no title to the letters patent sued on in the infringement suit brought by it against the plaintiffs herein, it having acquired such patents, if at all, by said illegal and void contract or the assignments executed pursuant to its terms and as a part of the same illegal scheme. *Mc-Mullen* v. *Hoffman*, 174 U. S. 639; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *Continental Wall Paper Co.* v. *Voight*, 212 U. S. 227; *Dunbar* v. *Am. Tel. & Tel. Co.*, 87 N. E. Rep. 521; *Thomson* v. *Thomson*, 7 Ves. 468; *Levy* v. *Kansas City*, 168 Fed. Rep. 524.

That the Creamery Company held assignments of the patents valid on their face will avail nothing; the court will look into the whole transaction. *McMullen* v. *Hoffman*, 174 U. S. 639.

The Creamery Company could not establish its cause of action in the infringement suit without relying on the illegal agreement, for it had to set up and prove its title to the patents sued on, and could only do this by bringing in the assignments which were a part of the illegal scheme. *McMullen* v. *Hoffman*, 174 U. S. 639; *Continental Wall Paper Co.* v. *Voight*, 212 U. S. 227.

An interlocutory decree in a patent infringement suit, providing for an injunction and ordering an accounting and sending the case to a referee to ascertain the amount of damages, has no force as an adjudication in any other action. The decree must be a final decree to have such effect. The decree in the suit brought by the defendant Creamery Package Manufacturing Company against these

plaintiffs was only interlocutory.  Further, the questions of monopoly, restraint of trade and lack of title are new in this action, and were not litigated or at issue in the patent infringement suit, as shown by the pleadings in the patent infringement suit set forth in full in the complaint in this action.  *Harmon* v. *Struthers,* 48 Fed. Rep. 260; *Ex parte National Enameling Co.,* 201 U. S. 156; *McGourkey* v. *Toledo & Ohio Ry. Co.,* 146 U. S. 536; *Smith* v. *Vulcan Iron Works,* 165 U. S. 518; *Humiston* v. *Stainthrop,* 2 Wall. 106; *The Keystone Iron Co.* v. *Martin,* 132 U. S. 91; *Water Co.* v. *Hutchinson,* 160 Fed. Rep. 41; *Brush Electric Co.* v. *Western Electric Co.,* 76 Fed. Rep. 761; *Australian Knitting Co.* v. *Gormly,* 138 Fed. Rep. 92; *Roth Tool Co.* v. *New Amsterdam Casualty Co.,* 161 Fed. Rep. 709.

This conspiracy was a continuing offense; every overt act committed in furtherance thereof was a renewal of the same as to all of the parties.  The statute of limitations does not begin to run until the commission of the last overt act.  Neither can the parties claim a vested right to violate the law.  19 Am. & Eng. Enc. (2d ed.), "Limitations of Actions;" *United States* v. *Green,* 115 Fed. Rep. 343; *Ochs* v. *People,* 124 Illinois, 399; *Spies* v. *People,* 122 Illinois, 1; 8 Cyc., p. 678.

It is an elementary principle of evidence that where two or more persons are associated together for some illegal purpose the acts or declarations of one of them in reference to the common object are admissible against them all. 1 Greenleaf, § 111; 2 Wigmore, § 1079; *American Fur Co.* v. *United States,* 2 Pet. 358; *S. C.,* 8 Curtis, 138; *Clune* v. *United States,* 159 U. S. 593; *Wiborg* v. *United States,* 163 U. S. 656.

A combination between two or more independent and competing corporations engaged in manufacturing and selling under letters patent and having an interstate trade and commerce, to eliminate the competition between

them and create a monopoly, is in violation of the Sherman Anti-trust Act. *Blount Mfg. Co.* v. *Yale*, 166 Fed. Rep. 555; *National Harrow Co.* v. *Hench*, 83 Fed. Rep. 36; *S. C.*, 76 Fed. Rep. 667; *S. C.*, 84 Fed. Rep. 226; *Bobbs-Merrill Co.* v. *Strauss*, 139 Fed. Rep. 155; *Strait* v. *National Harrow Co.*, 18 N. Y. Supp. 224; *National Harrow Co.* v. *Bement*, 47 N. Y. Supp. 462; *Mines* v. *Scribner*, 147 Fed. Rep. 927; *Bement* v. *National Harrow Co.*, 186 U. S. 70.

The court will not render its aid to the carrying out of a scheme prohibited by the Sherman Anti-trust Act. *National Harrow Co.* v. *Hench*, 84 Fed. Rep. 226; *Continental Wall Paper Co.* v. *Voight*, 212 U. S. 227; *Levy* v. *Kansas City*, 168 Fed. Rep. 524; *Northern Sec. Co.* v. *United States; McMullen* v. *Hoffman; Thomson* v. *Thomson, supra.*

Every combination resulting directly or necessarily in restraint of interstate trade is prohibited. It is immaterial what kind of a combination it is; none is exempt; a combination to prosecute law suits is as much prohibited as any other. See cases cited *supra.*

To wrongfully charge infringement is an actionable wrong. This is true apart from any claim of violation of Sherman Anti-trust Act. (Also to say that a person has no patent, or valid patent.) *Culmer* v. *Canby*, 101 Fed. Rep. 195; 25 Cyc. 263; *Bowsky* v. *Cimiotti Unhairing Co.*, 76 N. Y. Supp. 465; *Watson* v. *Trask*, 6 Ohio, 531; *Cousins* v. *Merrill*, 16 U. C. C. P. 114; *Meyrose* v. *Adams*, 12 Mo. App. 329; 25 Cyc. 559; *Flint* v. *Hutchinson Burner Co.*, 110 Missouri, 492; *Germ Proof Filter Co.* v. *Pasteur Filter Co.*, 81 Hun, 49; *Wren* v. *Weild*, L. R. 4 Q. B. 731; *Swan* v. *Tappan*, 5 Cush. 104; *McElwee* v. *Blackwell*, 94 Nor. Car. 261; *Snow* v. *Judson*, 38 Barb. 210; *Dicks* v. *Brooks*, L. R. 15 Ch. Div. 22; *Barley* v. *Walford*, 9 Q. B. 197.

To take away plaintiff's customers by intimidation and threats renders defendants liable to damages under the Sherman Anti-trust Act. *Loewe* v. *Lawlor*, 208 U. S. 274; *People's Tobacco Co.* v. *Am. Tobacco Co.*, 170 Fed. Rep. 396.

Plaintiffs have a cause of action at common law. The Creamery Package Company not having any title to the patents it sued upon, had no right or authority to prosecute its suit. It is the same as where a person brings a suit in the name of another without any authority for so doing. The person so doing must be charged with knowledge of the kind of a title it had. 38 Cyc. 517; *Bond* v. *Chapin*, 8 Metc. 31; *Moulton* v. *Lowe*, 32 Maine, 466; *Foster* v. *Dow*, 29 Maine, 442; *Smith* v. *Hyndman*, 10 Cush. (Mass.) 554; *Streeper* v. *Ferris*, 64 Texas, 12; *Hackett* v. *McMillan*, 112 Nor. Car. 513; *Metcalf* v. *Alley*, 24 Nor. Car. 38.

The contracts, conspiracy and combination of the two defendant corporations are clearly illegal, under both §§ 1 and 2 of the Anti-trust Act and also at common law. *Continental Wall Paper Co.* v. *Voight &c. Co.*, 212 U. S. 227; *Standard Oil Co.* v. *United States*, 221 U. S. 1; *United States* v. *Am. Tobacco Co.*, 221 U. S. 106; *Minnesota* v. *Creamery Package Co.*, 110 Minnesota, 415, 437; *S. C.*, 115 Minnesota, 207; *Peck* v. *Heurich*, 167 U. S. 624; *Thompson* v. *Thompson* (1802), 7 Ves. 468; *Hilton* v. *Woods* (1867), L. R. 4 Eq. 432; *Scott* v. *Brown* (1892), 2 Q. B. 724; *Clark* v. *Hagar* (1894), 22 Can. Sup. Ct. 510; *Power* v. *Phelan* (1884), 4 Dorion (Quebec) 57; *Little* v. *Hawkins* (1872), 19 Grant Ch. (U. C.) 267 (Ontario); *Colville* v. *Small*, 22 Ont. L. Rep. 426; 19 Ann. Cas. 515, citing *Continental Wall Paper Co. Case, supra; Johnson* v. *Van Wyck*, 4 App. D. C. 294; *Gregerson* v. *Imlay*, 4 Blatchf. 503; 10 Fed. Cas. No. 5795; *Pinney* v. *First Nat. Bank*, 68 Kansas, 223; 75 Pac. Rep. 119; 1 Ann. Cas. 331; *Wehmhoff* v. *Rutherford*, 98 Kentucky, 91; 32 S. W. Rep. 288; *Gilroy* v. *Badger*, 27 Misc. Rep. 640; 58 N. Y. Supp. 392; *Gescheidt* v. *Quirk*, 66 How. Pr. 272; *Roberts* v. *Yancey*, 94 Kentucky, 243; 21 S. W. Rep. 1047; 42 Am. St. Rep. 357; *Miles* v. *Mutual Reserve Fund Life Ass'n*, 108 Wisconsin, 421; 84 N. W. Rep. 159; *Bryn-*

*jolfson* v. *Dagner* (N. Dak.), 109 N. W. Rep. 320; *Burke* v. *Scharf* (N. Dak.), 124 N. W. Rep. 79; *Keiper* v. *Miller*, 68 Fed. Rep. 627 (affirmed in 70 Fed. Rep. 128; 16 C. C. A. 679).

A plaintiff cannot maintain an action for damages for infringement of letters patent, but his action must be dismissed, when he acquired the title to his cause of action and claim through a contract against public policy because champertous. 6 Cyc. 881, 882, 889; *Stewart* v. *Welch*, 41 Oh. St. 483.

No title to property can be acquired where the act of such acquisition is criminal, or prohibited by statute, or where the transfer is made as a part of, or a step in, or pursuant to, an act prohibited by statute or against public policy. *Pearce* v. *Rice*, 142 U. S. 28; *Central Transportation Co.* v. *Pullman's Car Co.*, 139 U. S. 24; *Miller* v. *Ammon*, 145 U. S. 421; 20 Cyc. 937, 938, and cases cited; *Holman et al.* v. *Ringo*, 36 Mississippi, 690.

The assignment or transfer of a negotiable security upon an illegal consideration is void, and confers no title to the instrument on the assignee; and hence the maker of the note given upon a valid consideration, may defeat a recovery upon it by an assignee who won it at a game of cards. *Drinkall* v. *Movius State Bank*, 11 N. Dak. 10; 14 Am. & Eng. Ency. of Law (2d ed.), 647, 468; *Thomas* v. *First Nat. Bank*, 213 Illinois, 261; *Burke* v. *Buck*, 31 Nevada, 74; 99 Pac. Rep. 1078; 21 Ann. Cas. 625.

Without the active assistance of a willing court, the trust and unlawful object must have failed; with such assistance, it was perfected. A court will not lend its aid to the accomplishment of an unlawful object. *Peck* v. *Heurich*, 167 U. S. 624; *Graham* v. *LaCrosse &c. Co.*, 102 U. S. 148; *Central Transportation Co.* v. *Pullman's Car Co.*, 139 U. S. 24; *Hoffman* v. *Bullock*, 34 Fed. Rep. 248; *Forker* v. *Brown*, 30 N. Y. Supp. 827; *Gruber* v. *Baker*, 20 Nevada, 472; 9 L. R. A. 308.

The object and purpose of a trust must be legal.  28 Am. & Eng. Ency. of Law (2d ed.), 866, 867, and cases cited.

An association formed for an unlawful purpose cannot sue.  30 Cyc. 29.

A corporation cannot be formed for an unlawful purpose.  10 Cyc. 161, and notes.

It is as important to the public that competition should not be repressed by worthless patents, as that the patentee of a really valuable invention should be protected in his monopoly.  *Pope Mfg. Co.* v. *Gormully,* 144 U. S. 238; *Minnesota* v. *Creamery Package Mfg. Co., supra.*

*Mr. Emanuel Cohen* and *Mr. Amasa C. Paul,* with whom *Mr. John B. Atwater, Mr. Frank W. Shaw, Mr. George C. Fry* and *Mr. W. A. Sperry* were on the briefs, for defendants in error:

The 1897 contract between the two defendants was not in restraint of trade, nor an attempt to create a monopoly.

In order to condemn an agreement as void under the act of July 2, 1890, its dominant purpose must be an interference with interstate or international commerce. *Cincinnati &c. Packet Company* v. *Bay,* 200 U. S. 179; *Hopkins* v. *United States,* 171 U. S. 578, 592; *United States* v. *Joint Traffic Association,* 171 U. S. 505, 568; *Anderson* v. *United States,* 171 U. S. 604, 615; *Addyston Pipe Co.* v. *United States,* 175 U. S. 211, 229; *Northern Securities Co.* v. *United States,* 193 U. S. 197, 331; *Field* v. *Barber Asphalt Co.,* 194 U. S. 618, 623; *Standard Oil Co.* v. *United States,* 221 U. S. 1, 66; *Union Pacific Coal Co.* v. *United States,* 173 Fed. Rep. 737.

The agreement of June, 1898, between the two defendants was not in violation of the Sherman Act.

Even if the Creamery Company were assumed to be a party to an unlawful combination in restraint of trade, this would not deprive it of its right to sue for infringe-

ment of its patents. *Strait* v. *National Harrow Company,* 51 Fed. Rep. 819; *Connolly* v. *Union Sewer Pipe Company,* 184 U. S. 540. See also *Fritts* v. *Palmer,* 132 U. S. 282; *Dickerman* v. *Northern Trust Co.,* 176 U. S. 181, 190, *South Dakota* v. *North Carolina,* 192 U. S. 286, 311; *Harriman* v. *Northern Securities Co.,* 197 U. S. 244, 291; *In re Metropolitan Railway Receivership,* 208 U. S. 90, 111; *International Harvester Co.* v. *Clements,* 163 Michigan, 55.

None of the contracts contained any provisions for bringing action against alleged infringers of patents for the purpose of driving them out of business.

The evidence did not warrant the jury in finding any agreement or conspiracy between the defendants to bring the patent suits for the purpose of driving the plaintiffs out of business.

The owner of a patent may notify infringers of his claims and warn them that unless they desist, suits will be brought to protect him in his legal rights. The only limitation on the right to issue such warnings is the requirement of good faith. *Kelly* v. *Ypsilanti Dress Stay Co.,* 44 Fed. Rep. 19; *Computing Scales Co.* v. *National Computing Scale Co.,* 79 Fed. Rep. 962; *Farquhar Co.* v. *National Harrow Co.,* 102 Fed. Rep. 714; *Adriance, Platt & Co.* v. *National Harrow Co.,* 121 Fed. Rep. 827; *Warren Featherbone Co.* v. *Landauer,* 151 Fed. Rep. 130; *Mitchell* v. *International &c. Co.,* 169 Fed. Rep. 145; 30 Cyc. 1054.

There is nothing in this case to indicate that any of the warnings issued by the defendants were made in bad faith, and they were promptly followed by the institution of the infringement suits.

The 1897 agreements had to do solely with the settlement of litigation then existing or apprehended, with the result that a large amount of litigation was settled, and the parties relieved from vexation and expense and enabled to proceed with their business. *Bement* v. *National Harrow Co.,* 186 U. S. 70, 93.

None of the 1897 agreements was in restraint of trade.

The restraint of trade was not greater than the circumstances of the transaction required. *Cincinnati &c. Packet Co.* v. *Bay,* 200 U. S. 176; *Shawnee Compress Co.* v. *Anderson,* 209 U. S. 423; *Whitwell* v. *Continental Tobacco Co.,* 125 Fed. Rep. 454, 461. Stipulations of the kind involved are frequent and valid. *Littlefield* v. *Perry,* 21 Wall. 205. They do not contravene public policy. *Westinghouse Co.* v. *Chicago &c. Co.,* 85 Fed. Rep. 786; *Reece Co.* v. *Fenwick,* 140 Fed. Rep. 287, 288.

Nor was the June, 1898, agreement in restraint of trade.

The stipulations in the Owatonna Manufacturing Company agreements as to prosecuting infringers were usual covenants, not warranting the inference of a purpose to drive competitors out of business by groundless suits. See collections of forms in Jones' Legal Forms, pp. 735, 739, 741; *Foster* v. *Goldschmidt,* 21 Fed. Rep. 70; *Macon Knitting Co.* v. *Leicester Con. Mills Co.,* 113 Fed. Rep. 844; *Wilfley* v. *New Standard Con. Co.,* 164 Fed. Rep. 421; *Critcher* v. *Linker,* 169 Fed. Rep. 653; *Jackson* v. *Allen,* 120 Massachusetts, 64; *The Forncrook Mfg. Co.* v. *Barnum Wire Co.,* 63 Michigan, 195; *Croninger* v. *Paige,* 48 Wisconsin, 229; *Washburn & Moen Mfg. Co.* v. *Southern Fire Co.,* 37 Fed. Rep. 428.

The Owatonna agreements had to do wholly with manufacture, and were thus beyond the purview of the Sherman law. *United States* v. *Knight Co.,* 156 U. S. 1; *United States* v. *Northern Securities Co.,* 120 Fed. Rep. 721, 728; *Diamond Glue Co.* v. *United States Glue Co.,* 187 U. S. 611, 616; *Cornell* v. *Coyne,* 192 U. S. 418, 428; *Loewe* v. *Lawler,* 208 U. S. 274, 297.

The Owatonna agreements had to do wholly with patented articles and were thus beyond the purview of the Sherman law. *Bement* v. *National Harrow Co.,* 186 U. S. 70, 91; *Henry* v. *Dick Co.,* 224 U. S. 1, 28.

The general agreement had for its purpose the pre-

vention of ruinous competition in churns and the avoidance and settlement of litigation and did not constitute an undue restraint of interstate commerce within the Sherman law, nor does it show a design to drive competitors out of business by groundless suits. *Whitwell* v. *Continental Tobacco Co.*, 125 Fed. Rep. 454; *United States* v. *Standard Oil Co.*, 173 Fed. Rep. 177.

A contract is not to be assumed to contemplate unlawful results unless a fair construction requires it upon the established facts. *Cincinnati Packet Co.* v. *Bay*, 200 U. S. 179, 184.

The subsequent conduct of the Creamery Company in using names other than its own, and in acquiring other concerns, does not tend to show a design to drive competitors out of business.

The Creamery Company has never monopolized or attempted to monopolize any part of interstate commerce within the meaning of the Sherman Act. See Noyes on Corporate Relations, § 389, p. 711; *National Cotton Oil Co.* v. *Texas*, 197 U. S. 115.

Even if the Creamery Company had monopolized a substantial part of interstate commerce, no causal connection is shown between its acts and the damages claimed by plaintiffs. 21 Am. & Eng. Ency. (2d ed.), 480; 29 Cyc., 439.

An executed illegal contract carries title to its subject-matter in the same way as if the contract were legal, unless the law violated declares to the contrary. 15 Am. & Eng. Ency. 932; *McMullen* v. *Hoffman*, 174 U. S. 639; *Fritts* v. *Palmer*, 132 U. S. 282.

The Sherman law does not forbid the passage of title, but on the contrary impliedly sanctions it. *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *Harriman* v. *Northern Securities Co.*, 197 U. S. 244.

The executed illegal contract is given the same effect as respects the passage of title as would be given to a legal

contract of the same tenor and effect.  *Strait* v. *National Harrow Co.*, 51 Fed. Rep. 819; *Edison Electric Light Co.* v. *Sawyer Mann Electric Co.*, 53 Fed. Rep. 592; *Soda Fountain Co.* v. *Green*, 69 Fed. Rep. 333; *Bonsack Machine Co.* v. *Smith*, 70 Fed. Rep. 383; *Saddle Co.* v. *Troxel*, 98 Fed. Rep. 620; *National Folding Box Co.* v. *Robertson*, 99 Fed. Rep. 985; *Otis Elevator Co.* v. *Geiger*, 107 Fed. Rep. 131; *General Electric Co.* v. *Wise*, 119 Fed. Rep. 922; *Fuller* v. *Berger*, 120 Fed. Rep. 274; *Motion Picture Patents Co.* v. *Laemmle*, 178 Fed. Rep. 104; *Motion Picture Patents Co.* v. *Ullman*, 186 Fed. Rep. 174; but see *contra*, *National Harrow Co.* v. *Quick*, 67 Fed. Rep. 130, which was affirmed on a different ground.

The plaintiffs suffered no damage by the successful prosecution of the suit against them.

· The system of remedies applied in Federal courts does not permit a pending suit in equity to be used as a ground of recovery at law.

The plaintiffs are in fact prosecuting a suit for malicious prosecution in defiance of the rule that such a suit is not maintainable unless the primary suit has terminated in their favor.

Under the Sherman Act the injury counted on must be of a kind actionable at common law.  The statute does not override the rules as to *damnum absque injuria.  Whitwell* v. *Continental Tobacco Co.*, 125 Fed. Rep. 454, 461; *Pennsylvania R. R. Co.* v. *Marchant*, 119 Pa. St. 561; *Smith* v. *Wilcox*, 47 Vermont, 537, 545; *Hortenstine* v. *Virginia-Carolina Ry. Co.*, 102 Virginia, 914; *Connolly* v. *Western Union Telegraph Co.*, 100 Virginia, 51; *Tyler* v. *West. Un. Tel. Co.*, 54 Fed. Rep. 634; *Crescent Live Stock Co.* v. *Slaughter House Co.*, 120 U. S. 141, 147; 26 Cyc. 55.

According to the weight of authority and reason a suit for the malicious prosecution of a civil action is not maintainable unless there be an interference with person or property. *Willard* v. *Holmes*, 142 N. Y. 492; *Burt* v. *Smith*, 181 N. Y. 1.

The difference of opinion is stated and the cases collected in 21 Am. Law Reg. 281–353 (article by Lawson); 93 Am. St.. Rep. 466–469 (article by Freeman); *McCormick Harvester Machine Co.* v. *Willan*, 63 Nebraska, 391; 4 Current Law, pp. 472–474 (article by Longsdorf); 19 Am. & Eng. Ency. 652, 653; 26 Cyc., pp. 14–16; *Wetmore* v. *Mellinger*, 64 Iowa, 741; *Dorr Cattle Co.* v. *Des Moines National Bank*, 127 Iowa, 153; *Smith* v. *Michigan Buggy Co.*, 175 Illinois, 619; *Potts* v. *Imlay*, 4 N. J. L. 377; *Luby* v. *Bennett*, 111 Wisconsin, 613; *contra*, see *Kolka* v. *Jones*, 6 N. Dak. 461; 71 N. W. Rep. 558; *Burnap* v. *Albert*, 4 Fed. Cas. 761 (No. 2170); *Cooper* v. *Armour* (C. C., N. Y.), 42 Fed. Rep. 215; *Bishop* v. *American Preservers Co.* (C. C., Ill.), 51 Fed. Rep. 272; *Wade* v. *National Bank of Commerce* (C. C., Wash.), 114 Fed. Rep. 377; *Tamblyn* v. *Johnston* (C. C. A., 8th Circ.), 126 Fed. Rep. 267, 270; *Wilkinson* v. *Goodfellow-Brooks Shoe Co.* (C. C., Mo.), 141 Fed. Rep. 218.

Even in jurisdictions where a suit may be maintained without interference with persons or property the want of probable cause must be very clearly proven. There is in this case no evidence at all of want of probable cause. *Eickhoff* v. *Fidelity &c. Co.*, 74 Minnesota, 139; Bigelow, Torts, 78; Newall, Mal. Pros. 35; Cooley, Torts, 207; *Ferguson* v. *Arnow*, 142 N. Y. 580, 583.

Even if the prosecution of the Owatonna Manufacturing Company's suit constituted an actionable injury, such injury did not arise from anything forbidden or declared unlawful by the Sherman Act.

The complainants have waived their right to the penalty under the Sherman Act by bringing suit in the state court for malicious prosecution. *Ætna Insurance Co.* v. *Swift*, 12 Minnesota, 437, 445; 7 Ency. Pl. & Pr. 364; 15 Cyc. 260; *Robb* v. *Vos*, 155 U. S. 13; *Bierce* v. *Hutchins*, 205 U. S. 340, 346; *Klipstein & Co.* v. *Grant*, 141 Fed. Rep. 72; *Water Co.* v. *Hutchinson*, 160 Fed. Rep. 41.

A patent owner may notify infringers of his claims and threaten them with a suit unless they desist. If he does this in good faith, believing his claims to be valid, and brings his suit with reasonable diligence he is acting within his rights and incurs no liability. There is no evidence of bad faith in the record. *Kelley* v. *Ypsilanti Mfg. Co.*, 44 Fed. Rep. 119; *Computing Scale Co.* v. *National Scale Co.*, 79 Fed. Rep. 962; *Farquhar Co.* v. *National Harrow Co.*, 102 Fed. Rep. 714; *Adriance, Platt & Co.* v. *National Harrow Co.*, 121 Fed. Rep. 827; *Warren Featherbone Co.* v. *Landauer*, 151 Fed. Rep. 130; *Dittgen* v. *Racine Paper Goods Co.*, 164 Fed. Rep. 84; *Mitchell* v. *International &c. Co.*, 169 Fed. Rep. 145.

The warnings considered as a separate cause of action were barred by the statute of limitations. *Chattanooga Foundry Co.* v. *Atlanta*, 203 U. S. 390; *Huntington* v. *Attrill*, 146 U. S. 657, 608; *Brady* v. *Daly*, 175 U. S. 148, 155, 156.

There is nothing in the evidence to show that either of the defendants had any improper or unlawful connection with the infringement suit brought by the other.

A combination to bring suits is not within the Sherman Act.

The public is not entitled to competition among patent owners or licensees, and therefore combinations relating to United States patents are not within the Sherman Act. *Northern Securities Co.* v. *United States*, 193 U. S. 197, 331; *Board of Trade* v. *Christy Grain Co.*, 198 U. S. 236, 252.

If the Sherman Act applies to combinations among patent owners, the patentee's power of assignment is limited, and to that extent his exclusive rights are destroyed.

Patent owners may lawfully secure for themselves, through a combination of their patents, a traffic, however extensive, in unpatented articles. *Henry* v. *A. B. Dick Company*, 224 U. S. 1.

MR. JUSTICE McKENNA delivered the opinion of the court.

Action for the recovery of damages in the sum of $406,881.60, being the total of certain specific items mentioned in the complaint, and for all other damages sustained by plaintiffs (so designated throughout this opinion) by virtue of the facts stated, including all sums that they are entitled to under the provisions of the Sherman Antitrust Act, July 2, 1890, 26 Stat. 209, c. 647, together with an attorney's fee. The grounds of recovery are set forth in the complaint, which, inclusive of exhibits, occupies 150 pages of the record, and seems to make impossible any attempt at brevity or condensation. The case, however, is not in wide compass and attention may be concentrated upon certain considerations. The contention of plaintiffs in its most general form is that the defendants entered into a conspiracy or combination in restraint of interstate trade and in execution of it, plaintiff's interstate business was destroyed by defendants wrongfully prosecuting two suits against them for the infringement of patents under which the articles of their trade were manufactured and by circulating slanders and libels to the effect that such articles were infringements of defendants' patents. A cause of action is hence asserted under § 7 of the Anti-trust Act. The section is as follows: "Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any circuit court of the United States in the district in which the defendant resides or is found, without respect to the amount in controversy, and shall recover three fold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee."

To justify recovery, therefore, injury must result from something forbidden or made unlawful by the act, and

what is forbidden or made unlawful is expressed in §§ 1 and 2. Section 1 is as follows: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal. . . ."

The acts forbidden are made a misdemeanor. And by § 2 it is also made a misdemeanor for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize, any part of the trade or commerce among the several States, or with foreign nations."

The question occurs, Do the facts of the case show a breach of the law by defendants and injury resulting from it to plaintiffs? The following facts are alleged: On the twenty-fourth of February, 1898, or just prior thereto, certain corporations, and one partnership were engaged in making or selling creamery supplies, including combined churns and butter workers, and transporting them in state and interstate commerce. All of the corporations and the partnership were in direct competition in their lines of business and as the result of it all of the articles manufactured and sold by them were sold at no more than a fair price and legitimate profit. The corporations controlled over 90% of the business of manufacturing and selling creamery and dairy supplies in the States of Michigan and Indiana and in all the States west and in some of the States east thereof, manufacturing the articles in one or more of the States and shipping by the same common carriers from the States where manufactured to other States and distributing and selling such articles there.

On the twenty-fourth of February, 1898, the Creamery Package Manufacturing Company, one of the corporations, and its stockholders, then engaged in the manufacture and sale of dairy and creamery supplies but not of

combined churns and butter workers, it being as to the
latter only the agent for their sale, entered into a contract
with the other corporations and the partnership by which
it was agreed to increase the capital stock of the
Creamery Package Manufacturing Company to enable
it to purchase the property and business of the
other corporations parties to the contract, including
in the property all patents and applications for
patents.

The contract is very elaborate and verbose, but we
need not give its particular covenants as no point is made
upon them; it being only alleged and contended that its
purpose and effect were that the Creamery Package
Manufacturing Company should acquire the property
and business of the other corporations, and that while
the latter should cease to exist they should be represented
as continuing as separate and independent concerns and
competitors in the market with the Creamery Package
Manufacturing Company and with one another; while in
truth and fact there would be no competition between
them.

It is alleged that in execution of the purpose of the
contract traveling men from the different houses un-
der instructions from the Creamery Package Manufac-
turing Company met and secretly arranged the bid
each should interpose, determining by lot and other
ways who should interpose the lowest bid and who the
highest.

The Owatonna Company was not a party to that con-
tract, but it is contended that it participated in or is
brought into the scheme and purpose of the contract
by certain agreements entered into by it with the Cream-
ery Package Manufacturing Company. They are all
attached to the complaint as exhibits and may be de-
scribed as transferring certain patents or the right to use
certain patents to the Creamery Package Manufactur-

ing Company.    A brief summary of them is given in the margin.[1]

---

[1] The first of the agreements between the companies was made April 19, 1897 (that was before the contract of February 24, 1898), and recited that the Owatonna Company was the owner of certain patents covering combined churns and butter workers and was manufacturing the same and that as the Creamery Package Manufacturing Company was desirous of handling the same as sole agents, the agreement was made. It conveyed five patents issued between January, 1893, and August, 1896, and applications for another. There were provisions as to the size, material and other details; also as to royalties to be paid to the Disbrow Manufacturing Company. And the Owatonna Company agreed to protect the Creamery Package Manufacturing Company from all suits for infringement of the patents, or claims for damages arising out of the sales of the churns and promptly and vigorously to attack infringers and to procure patents on all improvements made by it or by any person in its behalf

There was an addition to the contract made June 4, 1897, in regard to the repair parts of the "Winner" churns and the repair and perfection of the same, and the rebate from the billing price.

On January 12, 1898, a supplemental contract was made by the same parties as to the disposition of the royalties received under a license contract made September 30, 1897, with the Cornish, Curtis & Greene Manufacturing Company, of Fort Atkinson, Wisconsin.

On June 4, 1898, another agreement was made between the parties which referred to the agreement of April, 1897, and to the pendency of litigation based on the infringement or charges of infringement of the patents with which that contract was concerned. For the purpose of adjusting all claims growing out of such infringement and settling the litigation between the Owatonna Company and F. B. Fargo & Co., whose rights the Creamery Package Manufacturing Co. had acquired, it was agreed that one of the suits which was named, and in which proofs had been taken, should be brought to a speedy hearing and all other suits dismissed.

The Creamery Package Manufacturing Company agreed not to manufacture the machine known as the "Winner" or the "Disbrow," both referred to in the contract of April, 1897, called the "sales contract," or any other of a described kind made by the Owatonna Company, but was at liberty to manufacture and sell churns and butter workers of any other construction. Satisfaction of all royalties, damages and costs was agreed on.

It is alleged that on July 8, 1904, the Creamery Package
Manufacturing Company and the Owatonna Company
brought suit separately in the Circuit Court of the United
States for the First Division of the State of Minnesota,
at Winona, against the plaintiffs, charging infringement
of patents for churns and butter workers. The bills in
the suits are attached to the complaint in this action and
are in the usual form. Process was issued and the plain-
tiffs here answered. Upon proofs taken a decree was
entered in favor of plaintiffs and against the Owatonna
Company in the suit brought by it. It is not alleged in
the complaint but it is in the answer of the Creamery

---

The sales contract was continued in force and there was added to it
a provision entitling the Owatonna Company to furnish 55% in value
at list price of the churns and butter workers sold by the Creamery
Package Manufacturing Company in each year after the date of the
contract. If less than that per cent. should be made and furnished by
the Owatonna Company certain sums were provided to be paid by the
other company. And the latter company agreed not to discriminate
against the machines manufactured by the Owatonna Company in
favor of machines of its own manufacture or of other manufacturers,
and that it would give to the machines of the Owatonna Company the
same effort and energy to effect their sale. The Owatonna Company
agreed to protect the patents and prosecute infringers and give assist-
ance to the Creamery Package Manufacturing Company in the prose-
cution of infringers. Permission was given to the Owatonna Company
to use the "Disbrow" and "Winner" churns owned by the Creamery
Package Manufacturing Company or to be acquired by it. There was
also an agreement made on the 4th of June, 1898, between the parties
in settlement of claims on account of the use of patents with certain
other parties besides F. B. Fargo & Co., whose business the Creamery
Package Manufacturing Co. had acquired. There was a provision for
paying royalties to the Disbrow Co., with other details not necessary to
mention.

On January 1, 1903, another agreement was entered into between
the parties which disposed of and adjusted rights and contentions as to
patents for a machine called a pasteurizer and cream ripener. By an
agreement made January 1, 1903, the prices provided for in the sales
contract were changed in certain particulars

Package Manufacturing Company and not denied that it obtained a decree adjudging plaintiffs here infringers of the patents which were the subject of the suit.

It is alleged that the defendants here conspired with one another to commence and prosecute the suits and that they were commenced and prosecuted maliciously and without probable cause, whereby plaintiffs were caused certain items of damages.

The other allegations of the complaint need not be repeated in detail. They are to the effect that the contract of February 24, 1898, was made in violation of law to restrain state and interstate trade and commerce and that all that was done under it was in pursuance and execution of that purpose, including the suits brought against plaintiffs by the Owatonna Company and the Creamery Package Manufacturing Company for the infringement of patents. That prior to the bringing of those suits plaintiffs had a good and established trade and market for their churns and were manufacturing and shipping them in the States of Wisconsin, Iowa and South Dakota, and knowing this and fearing that such trade would be continued in those States and be extended to other States, defendants commenced the suits for infringement, and prior thereto and since have written letters and talked to purchasers and prospective purchasers of plaintiffs' churns, threatening lawsuits and actions for damages for infringement of the patents described in the bills and also threatened suits for injunction, and by this means destroyed plaintiffs' state and interstate trade.

That plaintiff D. E. Virtue and one Martin Deeg were the first joint inventors of a churn and butter worker and that a patent was issued therefor, No. 634,074, under which they manufactured those articles and sold them in state and interstate commerce except as they had been prevented by the suits brought against them as hereinbefore stated. And by elaborate allegations the patents upon

which those suits were brought are attacked for want of invention and novelty.

That the Creamery Package Manufacturing Company has purchased the property and business of other competitive concerns and that it has had during the last several years contracts with many and numerous dealers in the articles sold by which it required them to purchase such goods exclusively of it at certain fixed and maintained prices and to sell only in certain designated territory, the object of which is to secure a monopoly to the Creamery Package Manufacturing Company and to restrain interstate commerce. That all of the acts detailed were done in pursuance of a common scheme and conspiracy on the part of all of the defendants during the years 1897 and 1898 and ever since maintained and carried out, limiting the production of creamery supplies, fixing and determining their prices, restraining trade in them and monopolizing over 90% of their production and sale, of which prior to one year before the bringing of this action plaintiff had no knowledge or notice except the two suits in equity and the contract by which Virtue and Deeg transferred to the Creamery Package Manufacturing Company the exclusive right to manufacture the churn and butter worker under patent No. 634,074 for the period of three years. That they did not know that that contract was procured as part of the schemes of defendants. That they were at no time parties to acts of defendants and did not know of the wrongful contracts and combinations until after the time limited to take the testimony in the two equity suits.

The defendants answered the complaint, admitting some of its allegations and denying others. They alleged performance of the contract between the Creamery Package Manufacturing Company and the plaintiff Virtue and said Deeg and opposed to the charges of the complaint certain affirmative matters, including two actions brought in the state court.

A jury was empaneled to try the issues which, under the instructions of the court, found a verdict for defendants upon which a judgment was duly entered. It was affirmed by the Circuit Court of Appeals, 179 Fed. Rep. 115.

The Circuit Court and the Circuit Court of Appeals both decided, that the damages which plaintiffs alleged they sustained were not a consequence of a violation by defendants of the provisions of the Sherman Anti-trust Act. Both courts assumed for the purpose of their decision that the contract of February 24, 1898, between the Creamery Package Manufacturing Company and the other manufacturers and sellers of churns and butter workers was a combination in restraint of trade, but both courts held that the Owatonna Company was not a party to it nor became associated subsequently in its scheme.

Of the infringement suits the Court of Appeals said they exhibited "a case where two suits are brought, one by a party to a lawful agreement, the other by a party to an unlawful agreement, for the infringement of patents owned by them respectively and where both parties were doing no more than exercising their legal rights." And the court declared in effect that it could see no sinister significance in the suits being simultaneous, and said, further, that after a thorough examination of the record it agreed with the Circuit Court that there was no evidence offered at the trial "'which would warrant the jury in finding that any agreement of that kind existed.'"

The plaintiffs attack this conclusion in twenty-one propositions, some of which are of very broad generality and all, counsel contend, are supported by the decisions of this and other courts. It is quite impossible to consider them in detail without a review and repetition of the cases. The view we take of the case makes this unnecessary. The case is, as we have said, in narrow compass. The complaint charges a violation of the Sherman Act, and, as a means of accomplishing its purpose, the destruction of

plaintiffs' interstate trade by a malicious litigation of their rights. A necessary element of the charge is the coöperation of at least the corporate defendants in the purpose, and this determines our inquiry. In answering it we shall assume, as the lower courts assumed, that by the contract of February, 1898, the Creamery Package Manufacturing Company and the corporations competing with it entered into a combination offensive to the law. Did the Owatonna Company participate in it or subsequently join it or coöperate to execute its purposes? The question must be answered in the negative, as we shall proceed to show.

The Owatonna Company was a manufacturer of churns and butter workers under various patents owned by it, which articles it sold throughout the United States, and by the contract of April 19, 1897, it constituted the Creamery Package Manufacturing Company its sales agent of them, the latter company not making churns and butter workers. The contract was a perfectly legal one and preceded by some time the agreement of the twenty-fourth of February, 1898, entered into between the latter company and other corporations. There were contracts between the Creamery Package Manufacturing Company and the Owatonna Company subsequent to the latter date, but all of them were supplemental to the first one and had no illegal taint, nor did they affect it with illegal taint. It is true they granted rights to the Creamery Package Manufacturing Company, and exclusive rights, but this was no violation of law. The owner of a patent has exclusive rights, rights of making, using and selling. He may keep them or transfer them to another—keep some of them and transfer others. This is elementary; and, keeping it in mind, there is no trouble in estimating the character of such rights or their transfer. Of course, patents and patent rights cannot be made a cover for a violation of law, as we said in *Standard Sanitary Manufacturing Company* v. *United States*, 226 U. S. 20. But

patents are not so used when the rights conferred upon them by law are only exercised. The agreement of the nineteenth of April, 1897, constituted, as we said, the Creamery Package Manufacturing Company a sales agent of the churns and butter workers made by the Owatonna Company and fixed their list price. The patents under which the articles were manufactured were stated, and it was provided that the Owatonna Company should protect the Creamery Package Manufacturing Company from all suits for infringement, defend the validity of the patents. and promptly attack infringers. This provision is especially urged by plaintiffs as showing a common and illegal purpose between the companies. It has not that quality. It is but an assurance of title to the rights conveyed.

But it is said that the contract between the companies dated June 4, 1898, exhibits knowledge by the Owatonna Company of the Creamery Package Manufacturing Company's purpose, and "fitted into the scheme of the two defendant corporations to get a monopoly in the United States;" and this, it is said further, "can only be when all of the doings . . . are looked at as a whole from beginning to end." We cannot concur. We have seen that the contract of June 4, 1898 (inserted above in the margin), was but a settlement of claims growing out of reciprocal. charges of infringement and it has no other. connection with the agreement of February, 1898, than that some of the claims were against corporations which were parties to that agreement. It would be far-fetched to say that the Owatonna Company could not assert rights or protect rights because they were asserted or sought to be protected against corporations which had become members of an illegal combination, without participating in the guilt of such combination and becoming a joint conspirator in its purposes. But it may be said that we are considering the transactions isolatedly and ignoring .

their combined effect. ·That indeed would be a fault, but in order to compute their. combined effect we must estimate what strength they have separately, and 'so far, on the face. of the contracts, there is nothing to inculpate the Owatonna Company.

But a united purpose is sought to be established between it and the Creamery Package Manufacturing Company by the testimony of witnesses to, the effect that the contract of April 19, 1897, between the Disbrow Manufacturing Company and the Owatonna Company was urged by the president of the Creamery Package Manufacturing Company, who represented that the acceptance of royalties by the Disbrow Company was better than a continuance of competition. It is not practicable. to give all the ·testimony of what preceded and induced that contract. The part most relevant to our inquiry is that which related to the competition which existed between the companies. A witness, who was president of the Owatonna Company at the time, testified that it was suggested to him and other officers of the company by Mr. Gates, president of the Creamery Package Manufacturing Company, that a settlement ought to be brought about by letter or otherwise with the Disbrow Manufacturing Company "so as to get the two churns which were then being manufactured together," and stated that he (Gates) had had some conferences with the Disbrow Company, and he thought that if the officers of the Owatonna Company would go to Mankato "there might be an arrangement made whereby·. that business could be brought in connection with ours, and in that way eliminate the competition that at that time existed between the Owatonna Manufacturing Company and the Disbrow Manufacturing Company." This object was expressed by the witnesses in different ways.

The president of the Disbrow Manufacturing Company testified that Gates urged that the Disbrow Company should "stop manufacturing and make a contract with

the Owatonna Manufacturing Company, and let them
have all our patents on combined churns and butter
workers and other things, and combine the whole business
under one head, and let them do all of the manufacturing."
The witness testified that he at first rejected the proposi-
tion and resented the manner in which the proposal was
made, Gates going so far as to declare, with a profane
accompaniment, "You will do it or we will put you out of
business." But subsequently negotiations were resumed
and the president of the Creamery Package Manufactur-
ing Company explained that he wanted matters settled,
litigation stopped, "and a new arrangement made so that
the whole thing should be run under one head and one
control," and in that way "control the whole churn busi-
ness." The witness formulated the terms, which resulted,
after some days of negotiation, in the contract of April 19,
1897. But during the negotiations the witness did not
see the Owatonna Company's representatives until they
reached the point of signing the contract.

These declarations seem to be very arbitrary and un-
justifiable when standing alone and to have had no other
purpose than the ruthless crushing of a competitor in the
same line of business. They take on another character,
or rather the object of the negotiations and the contracts
which resulted from them, take on another character,
when all the testimony is considered. It will be observed
from the date of those negotiations and of the contracts
that they preceded by nearly a year the contract between
the Creamery Package Manufacturing Company and its
competitors and could have had no relation to it. And,
besides, they had a natural and adequate inducement
They were an adjustment of disputes and litigation grow
ing out of a contract between the Disbrow Company and
the Owatonna Company concerning the very same
patents. In one suit the Owatonna Company was plaintiff
against the Disbrow Company; in another suit the latter

company was plaintiff against the Owatonna Company, and both suits were based on disputes as to rights or obligations arising from the contract of October 2, 1893. The testimony also shows some controversy between the Creamery Package Manufacturing Company and the Disbrow Company in regard to other patents, but the effect of it is not easy to estimate. There was also a contract entered into between the Disbrow Company and the Creamery Package Manufacturing Company on the nineteenth of April, 1897, settling matters growing out of a contract between those companies made on the twelfth of October, 1896, by which the Disbrow Company made the Creamery Package Manufacturing Company its exclusive sales agent for churns and butter workers and mortgaged to the latter company its plant. The other provisions of the contract concern the adjustment of the relations between all of the companies under the contemporaneous contracts, and need not be stated in detail. It is clear, then, as we have already said, that what transpired on the nineteenth of April, 1897—negotiations and contracts—had no relation to the contract of February, 1898, and had for their inducement and object the settlement of controversies and rights growing out of the contract of October 2, 1893, between the Disbrow Company and the Owatonna Company, and that of October 12, 1896, between the Disbrow Company and the Creamery Package Manufacturing Company and the proposition of the latter company to become the sales agent of the churns made by the Owatonna Company. All of this is very complicated in the statement, but is simple enough in the results, and can be definitely estimated as to actual and legal effect. We may therefore sum up by saying that the Disbrow Company, by its contract with the Owatonna Company, did nothing more than confirm or enlarge the rights which the Owatonna Company had obtained, by the contract of 1893, and conveyed to it the exclusive right

in the patents for certain named royalties. This was no violation of law. The Owatonna Company did nothing more in its contract with the Creamery Package Manufacturing Company than to make that Company its exclusive sales agent, and this was no violation of law. Both contracts had natural and adequate legal inducements and conveyed rights that could under the law be conveyed, and, as a necessary incident to the conveyance, one only of the parties could thereafter exercise them. It may be that the Disbrow Company was to an extent in competition with the Owatonna Company, but it was a competition in part, at least, which, it was contended, was illegally conducted against rights which had been transferred in 1893. But, be that as it may, we repeat, patent rights may be conveyed partially or entirely, and the monopoly of use, of manufacture or of sale is not one condemned by law.

It is, however, urged that the infringement suits brought by the Creamery Package Manufacturing Company and the Owatonna Company against plaintiffs were provided for by the contracts between the Owatonna Company and the Disbrow Company, and their coincidence in time is urged as proof of concerted action on the part of defendants and of a conspiracy to destroy plaintiffs' business. The contention is that the bringing of those suits was not a single and isolated act but was a part of the more comprehensive plan and scheme to secure a monopoly in the United States of the business of making and selling creamery supplies, or, more accurately, counsel say, to continue and maintain the monopoly already acquired. And it is contended that the attempt was successful in that it destroyed plaintiffs' business. That these contentions are untenable we have demonstrated. The contracts we have shown were legal conveyances of rights, and the provision for the prosecution of infringement suits was but an assurance of those rights. Patents would be of little

value if infringers of them could not be notified of the
consequences of infringement or proceeded against in the
courts.   Such action considered by itself cannot be said to
be illegal.   Patent rights, it is true, may be asserted in
malicious prosecutions as other rights, or asserted rights,
may be.   But this is not an action for malicious prosecu-
tion.   It is an action under the Sherman Anti-trust Act
for the violation of the provisions of that act, seeking
treble damages.   This, indeed, plaintiffs take special pains
to allege, that there may be no confusion about the right
or grounds or extent of recovery.   The testimony shows
that no wrong whatever was committed by the Owatonna
Company, and the fact that it failed in its suit against
plaintiffs does not convict it of any.

This is enough to dispose of the case, for the foundation
of the complaint is that the defendants entered into a con-
tract or combination in restraint of trade which caused
damage to plaintiffs; and the guilt of the individual de-
fendants and of the two corporations and of all of their
officers, servants, and stockholders, is very carefully
alleged.   It was in this aspect that the case was tried.

But plaintiffs urge that the Creamery Package Manu-
facturing Company was of itself a combination offensive
to the statute and that they were entitled to go to the jury
as to that company.   But the contention was not made in
the Circuit Court nor was it made in the Circuit Court of
Appeals.   The case was tried and ruled upon, as we have
seen, on the ground of the coöperation of the defendants
in a scheme of monopoly and restraint of trade.   There was
no liability asserted in the Circuit Court or in the Circuit
Court of Appeals against one of the defendants separately
from the others.   Concert and coöperation was asserted
against all and a ruling was not invoked as to the separate
liability of either.   One Frank LaBare was a party de-
fendant and as to him plaintiffs made a motion that "the
case be dismissed and dropped."   The court denied the

motion for some reason and then plaintiffs' counsel said, "We desire to proceed with the case as against the defendants, the Owatonna Manufacturing Company and the Creamery. Package Manufacturing Company." The plaintiffs then offered to prove that they had not infringed the patents sued on by the defendants. It is manifest, therefore, that the separate liability of the Creamery Package Manufacturing Company is an afterthought and urged in this court for the first time.

There are twenty-seven errors assigned upon offers of testimony excluded or upon other rulings of the Circuit Court. These we have examined and find that in the view taken by the courts below of the case and that which we take, there was no error of substance committed.

*Judgment affirmed.*