INTERNATIONAL VISIBLE SYSTEMS CORPORATION v. REMINGTON–RAND, Inc.
No. 6229.

Circuit Court of Appeals, Sixth Circuit.
June 6, 1933.

Leonard H. Freiberg, of Cincinnati, Ohio, for appellant.

Charles P. Franchot, of Buffalo, N. Y. (Taft, Stettinius & Hollister, of Cincinnati, Ohio, and William G. Shoemaker, Jr., of Buffalo, N. Y., on the brief), for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

Appeal by International Visible Systems Corporation (plaintiff below) from an order sustaining the demurrer of Remington-Rand, Inc., appellee, to the petition of appellant.

The action was based upon sections 2 and 15 of title 15, U. S. C. (15 USCA §§ 2, 15), portions of the Act commonly called the Sherman Anti-Trust Act. The petition alleged that appellant carried on the business of manufacturing card index systems with containers therefor, bookkeeping systems, and related products; that appellee was a competitor; and that both parties were engaged in interstate commerce. It also contained the averment of diversity of citizenship and requisite jurisdictional amount.

The burden of the petition rested in the averment that certain acts of appellee "were done and made with the purpose of attempting to unreasonably monopolize the trade or commerce among the several states in the commodities which the plaintiff" (appellant) "manufactured and in which it dealt." Recovery was sought for the three-fold damages provided in section 15 of the Act (15 USCA § 15). Two particular acts set forth as sufficient to constitute the alleged attempt at monopoly are:

(1) That "on or about March 25, 1931, the defendant learning of the endeavor of the plaintiff to attract additional capital needed in plaintiff's business, maliciously and without probable cause, and with intent to destroy the business of the plaintiff, and to smother competition with the defendant, filed an action No. 725 on the Equity Docket of this Court pretending an infringement by the plaintiff on two certain patents of the defendant. Said suit was given wide publicity, as the defendant anticipated, and hindered and prevented this plaintiff not alone from obtaining additional capital at that time, but from freely selling its products in the different states of the Union."

And (2) that "on or about the 5th day of October, 1931, the plaintiff was about to have the shares of stock of International Visible Systems Corporation, a corporation of Dela-

ware, and the holding company for the plaintiff, listed on the Produce Exchange of the City of New York. The defendant learning of the anticipated plan of the plaintiff to have this stock so listed, caused an article to be published and sent abroad over the Dow-Jones Ticker Service in the City of New York and elsewhere, stating that the defendant had 'been awarded decision against five competitors in Germany in a series of law suits in which the validity of Remington-Rand's patents on cardex visible card systems was upheld. Competing makers are compelled to discontinue their infringements.

" 'Remington-Rand has filed a suit against International Visible Systems Corp., alleging infringement of the corresponding patents in the United States.'

"Said publicity was copied, as the defendant knew and anticipated, by the Wall Street Journal in the evening edition of the same day, and in many other financial publications. Said information contained in the last quoted paragraph of said publication was false and untrue, and said last quoted paragraph in connection with the first quoted paragraph, were calculated to and did prevent the Produce Exchange from listing the securities of said holding company on the Produce Exchange of New York. The plaintiff, as the defendant well knew, was to receive the benefit of the subscriptions to the stock of said holding company, and get the actual money therefrom less expenses in obtaining said subscription, and less the commissions of the brokers who had been employed to obtain them."

█ The suit brought by appellee for the infringement of its patents cannot of itself be characterized as an attempt to monopolize trade or commerce. It was nothing more than a lawful method of protecting appellee's claimed monopoly under the patent laws. Virtue v. Creamery Pkg. Mfg. Co., 227 U. S. 8, 38, 33 S. Ct. 202, 57 L. Ed. 393; see, also, Bement & Sons v. National Harrow Co., 186 U. S. 70, 92, 22 S. Ct. 747, 46 L. Ed. 1058; Henry v. A. B. Dick Co., 224 U. S. 1, 27, 32 S. Ct. 364, 56 L. Ed. 645, Ann. Cas. 1913D, 880; Rubber Tire Wheel Co. v. Milwaukee Rubber Works Co., 154 F. 358, 362 (C. C. A. 7); United States v. Motion Picture Patents Co., 225 F. 800, 805 (D. C.). Moreover, the declaration in the petition that the suits for infringement were brought against appellant maliciously and without probable cause adds nothing to the weight of the claim that the infringement suit was an attempt to monopolize trade or commerce. Section 2 of the Anti-

Trust Act (15 USCA § 2) does not require that such attempt be made maliciously and without probable cause. See Virtue v. Creamery Pkg. Mfg. Co., supra.

█ Nor can we regard the second paragraph of the Dow-Jones Ticker Service publication as an attempt to monopolize trade or commerce. The petition avers that this paragraph was false, but it does not aver that appellee knew it was false at the time it was published, nor that it was willfully or deliberately caused to be published. It cannot be regarded as false as a whole because the petition itself avers that appellee had filed an infringement suit against appellant. We must assume that, if there is any falsity, it is to be found in that portion stating that the patents sued on corresponded to the patents of appellee which had been upheld in Germany. We cannot as a matter of law regard this isolated statement (Virtue v. Creamery Pkg. Mfg. Co., supra, at page 37 of 227 U. S., 33 S. Ct. 202) published more than six months after the institution of appellee's patent suit as an attempt at monopoly whatever effect it may have had upon appellant's business. The most that can be said is that it was an unwarranted attempt by appellee to protect its own patent rights.

█ But appellant contends that, even if the petition fails to state a cause of action under the Sherman Anti-Trust Act (15 USCA §§ 1–7, 15 note), its averments with reference to the Dow-Jones publication do embody a substantial cause of action for slander of title. We cannot accept this view. As indicated above, the petition is based upon no such theory. The nature of the action for slander of title is peculiar, being based upon a defamatory attack upon property. It has little in common with the ordinary action for slander. Its gist is the special pecuniary loss sustained by reason of malicious utterances or publications by the slanderer. Three elements are necessary for the maintenance of such a suit. The words must be: (1) False; (2) maliciously published; and (3) result in some special pecuniary loss. These requisites must not only be proved but under the fundamental law of pleading must be averred. Cooley on Torts (4th Ed.) vol. I, § 163; Jaggard on Torts, vol. I, § 182; Hardin Oil Co. v. Spencer, 205 Ky. 842, 845, 266 S. W. 654; see, also, Ebersole v. Fields, 181 Ala. 421, 62 So. 73; Burkett v. Griffith, 90 Cal. 532, 537, 27 P. 527, 13 L. R. A. 707, 25 Am. St. Rep. 151; Hopkins v. Drowne, 21 R. I. 20, 22, 41 A. 567; Cardon v. McConnell, 120 N. C. 461, 27 S. E. 109; Hanson v. Hall Mfg. Co., 194

Iowa, 1213, 190 N. W. 967; Odgers on Libel & Slander (5th Ed.) p. 77; Newell on Slander and Libel (3d Ed.) p. 249.

The petition contains no direct averment that the publication complained of was maliciously caused, that is, caused with the intention of injuring appellant (Newell, p. 250), nor does the publication itself impliedly carry similar import. As pointed out above, the petition not only fails to allege that the matter complained of was knowingly false, but it also fails to allege that the publication was made without probable cause.

Appellant contends that it was relieved by section 11341 of the General Code of Ohio from averring that the article was caused maliciously. This section is as follows: "Libel and slander. In an action for a libel or slander, it shall be sufficient to state, generally, that the defamatory matter was published or spoken of the plaintiff." But it is clear to us that this section applies only to the ordinary actions for libel and slander. There is nothing therein to indicate that it has application to the distinctive action of slander of title.

Finally, the requisite averment of special damages or special loss, which is the gist of the action (Newell, p. 248; Barquin v. Hall Oil Co., 28 Wyo. 164, 171, 201 P. 352, 202 P. 1107; Ebersole v. Fields, supra, 181 Ala. page 424, 62 So. 73), is wholly lacking. In addition to seeking the three-fold damages allowed by section 15 of the Anti-Trust Act, appellant contents itself with the general averments that by reason of the acts of appellee it was no longer able to use its patents; that many of its customers would not purchase its goods, and that its creditors had been frightened and induced to press for the payment of their claims. These general averments fall far short of setting forth the special pecuniary loss recoverable in an action on the case for slander of title.

Judgment affirmed.